**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
**BALTIMORE DIVISON**

| | |
|---|---|
| NORMA E. HURLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **Case No.** _____ |
| | ) |
| CALVIN BALL, HOWARD COUNTY | ) |
| EXECUTIVE, in his individual and | ) |
| professional capacities, | ) |
| | ) |
| And – | ) |
| | ) |
| GREGORY DER, CHIEF OF POLICE, | ) |
| in his individual and professional capacities, | ) |
| | ) |
| And – | ) |
| | ) |
| LISA MYERS, FORMER POLICE CHIEF, | ) |
| in her individual and professional capacities, | ) |
| | ) |
| And – | ) |
| | ) |
| DAVID FRANCIS, FORMER ACTING | ) |
| CHIEF OF POLICE, in his individual and | ) |
| professional capacities, | ) |
| | ) |
| And – | ) |
| | ) |
| HOWARD COUNTY | ) **JURY TRIAL DEMANDED** |
| DEPARTMENT OF POLICE, | ) |
| | ) |
| - And - | ) |
| | ) |
| HOWARD COUNTY, MARYLAND | ) |
| Defendants | ) |

## VERIFIED COMPLAINT

COMES NOW Plaintiff, NORMA E. HURLEY ("Officer Hurley"), by and through her attorneys, Daniel L. Cox, The Cox Law Center, LLC, and for her COMPLAINT against Defendants HOWARD COUNTY DEPARTMENT OF POLICE, states as follows:

## VENUE

1.      Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over this case because there is a federal question involved between plaintiff and Defendants  that is a civil action arising under the Constitution and is substantially founded upon a federal law or statute.

2.      Pursuant to 28 U.S.C. § 1391(b)(1) & (2), Venue is proper in this Court because Defendants  is located in this district, and because a substantial part of the events and omissions giving rise to this case occurred at Defendants' place of incorporation and/or headquarters and offices are in this district.

## PARTIES

3.      Plaintiff, Ms. Hurley ("Ms. Hurley ") was at all times relevant a 28-year sworn law enforcement officer and employee of Howard County Department of Police, 3410 Court House Drive, Ellicott City, Maryland 21043.

4.      Defendant Calvin Ball is the Howard County Executive ("Defendants" or "Ball") and as such is the highest chain of command over the police officers of Howard County including Plaintiff, having final decision-making authority and supervisory capacity over the decisions and actions of Defendants and is subject to the Maryland and United States Constitutions and laws and is prohibited from discriminatory and retaliatory acts being bound to uphold the said Constitutions.

5.      Defendant Gregory Der, Chief of Police ("Defendants" or "Der") is the appointed chief of police of the Howard County Department of Police and as such had primary and final authority in all supervisory and employment matters for the Department and is subject to the Maryland and United States Constitutions and laws and is prohibited from discriminatory and

retaliatory acts being bound to uphold the said Constitutions.

6.      Defendant Lisa Myers, Former Chief of Police ("Defendants" or "Myers") was the appointed chief of police of the Howard County Department of Police and as such had primary and final authority in all supervisory and employment matters for the Department and is subject to the Maryland and United States Constitutions and laws and is prohibited from discriminatory and retaliatory acts being bound to uphold the said Constitutions.

7.      Defendant David Francis, Former Chief of Police ("Defendants" or "Francis") was the interim/acting chief of police of the Howard County Department of Police and as such had primary and final authority in all supervisory and employment matters for the Department and is subject to the Maryland and United States Constitutions and laws and is prohibited from discriminatory and retaliatory acts being bound to uphold the said Constitutions.

8.      Defendant Howard County Department of Police, ("Defendants" or "Department") is a Maryland corporation and employs more than fifteen employees and is subject to the Maryland and United States Constitutions and laws and is prohibited from discriminatory and retaliatory acts being bound to uphold the said Constitutions.  It employs approximately 509 employees as of 2025.

9.      Defendant Howard County ("Defendants" or "County") is an entity within the state of Maryland authorized and subject to the Maryland and United States Constitutions and laws and is prohibited from discriminatory and retaliatory acts being bound to uphold the said Constitutions.  It employs approximately 182,916 people as of 2025.

## COMMON ALLEGATIONS

10.      Ms. Hurley is an outstanding employee of Howard County Department of Police. She was employed by the Department on September 8, 1997 serving full-time until her

unlawful suspension by Defendants on July 26, 2022. After reinstatement to her position, she has been employed full-time through the present date.

11.    Ms. Hurley is a healthy Hispanic woman who is a Christian with strong religious and spiritualist beliefs regarding her body, the Temple of the Holy Spirit, and what is injected or put into her body and what her body is subjected to, including her religious beliefs that all persons are created in the Image of God and therefore have an unalienable and informed right to consent to any and all medical treatment, DNA tracking or collection, genetic profiling and tracking and the forced, coerced or unknowing participation in "vaccinations" or other medical treatments or tracking and disclosures related thereto.

12.    Ms. Hurley repeatedly declared her aforesaid religious faith to Defendants requesting an exemption and accommodations from their COVID-19 vaccination status and testing requirements, and their DNA collection and Equity profiling of her ethnicity and Hispanic race and national origin.

13.    Ms. Hurley was thereafter subjected to discrimination, harassment, violations of terms of employment, religious targeting discrimination, suspension and damages all because she is a woman of strong religious faith as a biblically based Christian, and because of her national origin as a Hispanic woman.

14.    In response to the COVID-19 pandemic, Defendants required Ms. Hurley and their employees to be repeatedly subjected to "COVID-19 questions, protected health intrusions, invasions of privacy and forced/demanded disclosures and then, coerced and pushed for compliance related to "vaccination" status with an experimental "Emergency Use Authorized" "COVID-19 vaccines."

15.    Ms. Hurley held and repeatedly disclosed to Defendants her religious beliefs that conflicted with the Defendants' forced vaccination status inquiries for COVID-19 testing policies.

16.    However, from on or about December 1, 2021 to the present, Defendants targeted her in bad faith because of her religious beliefs and national origin to refuse to engage with her in the mandatory interactive process for any religious accommodations or exemptions.

17.    From on or about December 1, 2021, Defendants continuously denied Ms. Hurley any religious accommodations or exemptions from their "COVID-19 Vaccination" and "COVID-19 testing" "mandates."

18.    From on or about December 1, 2021 to the present Defendants continuously subjected Ms. Hurley to religious, national origin-related, and genetic information-based discrimination and to retaliatory harassment.

19.    From on or about December 1, 2021 to the present Defendants also subjected Ms. Hurley to excessive workplace bullying, demanding she submit to participation in an orchestrated lie to document medical procedures without full and informed consent and against her religious beliefs, and then forcing and coercing her to participate in the Defendants' scheme of mass DNA collection for the world's largest private biometric ID library which could be used to genetically trigger disease at will.

20.    During the aforementioned period, Ms. Hurley was subjected to inequitable wages, religious exemption and accommodation denials, unfavorable changing terms and conditions of employment all as a pretext to discriminate against her on the basis of her religion, national origin, and genetic information and to retaliate against her for engaging in

protected activity and being a member of a protected class.

21.    From on or about December 1, 2021 to the present Defendants targeted Ms. Hurley with discrimination and retaliatory harassment as a non-symptomatic healthy Hispanic woman and faithful employee because Howard County and Defendants established an illegal policy by targeting vaccine and testing mandates by race and national origin, including singling out Ms. Hurley, a healthy Hispanic woman.

22.    During the aforementioned period, Ms. Hurley repeated sought and requested the forms and procedures for submitting a formal religious exemptions from the mandating COVID-19 vaccination status reporting and testing requirements and the DNA mass collection scheme, including with a witness present named Officer Michael Marino, but Defendants failed and refused to provide the religious exemption process from any of their COVID-19 "mandates."

23.    During the aforementioned period, Ms. Hurley made Defendants and Defendants chain of command leadership and its Human Resources Division repeatedly aware of the discrimination and retaliatory harassment occurring against her.

24.    However, the Defendants took no corrective action nor did they even address her concerns.

25.    In furtherance of its scheme and advancement of targeted humiliation, discrimination and retaliation for engaging in her protected activity and class, on or about July 26, 2022 Defendants issued Ms. Hurley an unpaid suspension from employment upon fabricated allegations of insubordination.

26.    The so-called reasons Defendants has provided for Ms. Hurley's suspension,

inequitable wages, religious exemption and accommodation denials, unfavorable changing terms and conditions of employment are all fabricated and presented by Defendants as a pretext to discriminate against her on the basis of her religion, national origin, and genetic information and to retaliate against her for engaging in protected activity and being a member of a protected class.

27.    The suspension of her job and pay was a direct and proximate response to her religious exemption and accommodation requests including her repeated refusal to submit to disclosure of her private health information, COVID-19 vaccination and testing and the Defendants' DNA collection and Equity profiling tracking of her medical information as a healthy Hispanic woman.

28.    Ms. Hurley thereafter filed for immediate relief and appealed the discriminatory targeting of her job and pay and of her person and invasion of privacy and harassment with her union, including appealing the matter internally and in the Maryland courts for administrative relief.

29.    Only after the threat of and realization of lawsuit and exposure of the targeted harassment and discrimination did Defendants reluctantly reinstate Ms. Hurley to her position as a paid career law enforcement officer.

30.    In order to defend her career and protect her retirement, and her privacy, as well as to seek to be free from discrimination, harassment and retaliation, Ms. Hurley was required to expend considerable time and efforts in litigation over a several year period, to exhaust her administrative remedies.

31.    Despite Ms. Hurley's administrative procedures litigation, Defendants remain

defiant and refused to acknowledge any wrongdoing, refused to provide back pay, front pay, lost wages, lost retirement, lost career opportunities, or in any way to correct its wrongdoing towards her, or remove the negative and fraudulent suspension from her personnel records.

32.     Despite Ms. Hurley's administrative procedures efforts, Defendants continued to assert a false power over her private medical information, to target her and department employees on the basis of Equity, race, national origin and ethnicity, and religion.

33.     Defendants claimed that they offered exemptions to the COVID-19 vaccination and testing coercion, DNA collection, and Equity medical COVID-19 vaccination profiling for those who received an approved medical or religious exemption from the Accommodations Coordinator, yet they failed and refused to disclose any such procedures, terms or conditions.

34.     However, in fact Defendants targeted Ms. Hurley a Christian Hispanic woman with discrimination, suspension, termination, inequitable and lost wages, and retaliatory harassment, while on information and belief considering the exemptions of other religious faiths and of those with medical exemptions and not profiling or tracking their information.

35.     Ms. Hurley then exhausted her administrative procedure remedies within the Defendants' internal appeals board, including appealing to the Maryland Supreme Court the said decision under the administrative procedures, all to no avail.  **Exhibit One, Pro Se Petition for Writ of Certiorari, attached hereto and incorporated herewith as if fully set forth within this pleading.**  The facts and allegations therein are incorporated herein as if fully set forth in these Common Allegations.

36.     Moreover, Ms. Hurley's Chief of Police Mr. Der requested she personally call/text him her religious concerns with the COVID-19 vaccines and testing, which she did on many

occasions. However, he completely ignored the texts and refused to provide Ms. Hurley with any considerations for exemption approvals and/or accommodation considerations.

37.     Moreover, County Executive Calvin Ball illegally established policies including but not limited to: coercion of employees to report mandatory COVID-19 "vaccinations" status and medical testing in exchange for employment, pay, favors and incentives, refusal to provide religious accommodations from the same, genetic DNA collection for a world-wide database of private medically-protected information in order to target and profile individuals by race, ethnicity, national origin and/or religion, and discriminate against them and did so to Ms. Hurley when she objected to being subjected to the same illegal data-collection, and targeted ethnic and minority discrimination in order to push his own so-called "COVID-19" Equity programs targeting protected classes on the basis of national origin and ethnic and religious targeting including Ms. Hurley, a healthy Hispanic woman.

38.     Moreover, on information and belief, the Howard County executive government and Howard County Department of Police unlawfully conspired and colluded with the State of Maryland and with other unknown entities to advance these unlawful schemes of targeted discrimination, retaliation and suspension of Ms. Hurley including but not limited to its policies and procedures to force and coerce genetic DNA collection for its world-wide database collection and the targeting of Ms. Hurley as a healthy Hispanic woman under its Equity policies, all unlawfully in exchange for her continued employment.

39.     Defendants repeatedly in an ongoing manner subjected Ms. Hurley to ridicule and disregard for her religious faith and objections to the Defendants' COVID-19 vaccination status and testing requirements, and to its DNA collection and Equity coercion policies.

40.     The discrimination, harassment and retaliation caused Ms. Hurley to suffer extreme humiliation, stress and emotional distress such that she had years of sleepless nights, constant fear of professional reprisal on the job, ridicule for her refusal to take the "jab," in addition to her lost wages, and compensatory damages.

41.     Thereafter, on January 24, 2024 Ms. Hurley timely filed an official complaint with the Equal Employment Opportunity Commission which was cross-filed with the Maryland Commission on Civil Rights.

42.     On February 8, 2025 Ms. Hurley received her Right to Sue Letter and has timely filed her lawsuit establishing jurisdiction in this Court.


**Count I — Unlawful Employment Practice in Violation of Title VII of Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) – Religious Discrimination**
**And, Maryland Fair Employment Practices Act ("MFEPA")**
**State Gov't Art. 20-601 *et seq.***

43.     MS. HURLEY adopts and realleges each and every allegation of her Complaint as though fully set forth herein.

44.     This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)(1) and the Maryland Fair Employment Practices Act ("MFEPA") State Gov't Art. 20-601 *et seq.*

45.     At all times relevant, Defendants were an employer within the scope and definition of 42 U.S.C. § 2000e-2(a)(1) under Title VII of the Civil Rights Act and the Maryland Fair Employment Practices Act ("MFEPA") State Gov't Art. 20-601 *et seq.*

46.     MS. HURLEY reasserts that she was subjected to severe discrimination and

harassment on a regular and ongoing basis from at least December 1, 2021 including with her suspension without pay.

47.    The discrimination, harassment and retaliation experienced by MS. HURLEY was the result of Ms. Hurley's expression of her strongly held religious beliefs, which she made clearly known to her Employer on numerous occasions in person and with a witness present to Defendants' COVID-19 vaccination status and testing requirements. The exemption was a declaration of her faith in order to receive an official accommodation from Defendants' COVID-19 vaccination status reporting and DNA tracking and Equity requirements. Defendants committed religious discrimination and failed to accommodate her when they rejected her multiple reasonable accommodation offers and provided no possible accommodation option to Ms. Hurley nor would they provide her with the procedures for submitting a religious exemption.

48.    The discrimination faced by MS. HURLEY was so severe and pervasive so as to alter the conditions of the work environment by creating a hostile environment with, for example, a persistent threat of termination and Defendants 's refusal to engage in discussions regarding possible accommodation options.

49.    Upon Plaintiff filing her religious exemption and again after making Ethics reports to Defendants about the unwelcome discrimination, disparate treatment (where others received the accommodations requested by Defendants ), harassment, retaliation and repeated efforts to push MS. HURLEY to act contrary to her faith, Defendants were on notice of the said unlawful employment practices.

50.    Then, after being on notice, Defendants suspended Plaintiff from her employment after she suffered acute and obvious discrimination, disparate treatment (where others received

the accommodations requested by Defendants ), harassment, retaliation and ongoing pervasive mockery of her religious faith by repeatedly rejecting it as any basis for her to object to the emergency use authorized (EUA) mandatory COVID-19 vaccination status and testing and DNA collection and Equity (national origin) tracking and disclosure efforts of the department.

51.    The discrimination was pervasive and made absolutely known to Defendants  and was brought to the attention of the employees of Defendants who were authorized to do something about it, yet nothing was ever done to accommodate Ms. Hurley or cease the discrimination, retaliation and harassment, or the DNA collection database and Equity mandates.

52.    Defendants are liable for the failure to accommodate Plaintiff's religious exemption and the hostile work environment they created through the acts, failure to act, and omissions of their employees/managers.

53.    The foregoing acts perpetrated against MS. HURLEY by Defendants  constitute acts of unlawful employment practice, in violation of 42 U.S.C. § 2000e-2(a)(1).

54.    As a result of the foregoing unlawful employment practices perpetrated against her by Defendants, MS. HURLEY suffered humiliation, emotional distress, physical pain, suffering, and has suffered economic losses, which are a direct and proximate cause of the foregoing unlawful employment practices.

55.    MS. HURLEY is informed and believes, and thereupon alleges, that Defendants' conduct as described above was intentional, willful, wanton, malicious and done in reckless disregard for the safety and well-being of MS. HURLEY.

56.    MS. HURLEY is informed and believes, and thereupon alleges, that Defendants'

conduct as described above was intentional, willful, wanton, malicious and done in reckless disregard for the safety and well-being of MS. HURLEY and for discriminating against her disparately from other employees who participated in documentation, electronic preservation and electronic housing of protected health information regarding COVID-19 vaccination status.

57.     By reason thereof, MS. HURLEY is entitled to the imposition of punitive damages and attorney's fees and costs authorized by Title VII of the Civil Rights Act of 1964, as amended, and MFEPA, in a sum according to proof to be presented at trial.

**Count II— Unlawful Employment Practice in Violation of Title VII of Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) – Hostile Work Environment because of Religion And Maryland Fair Employment Practices Act ("MFEPA") State Gov't Art. 20-611** *Workplace Harassment*

58.     MS. HURLEY adopts and realleges each and every allegation of her Complaint as though fully set forth herein.

59.     This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)(1) and Maryland Fair Employment Practices Act ("MFEPA") State Gov't Art. 20-611 *Workplace Harassment.*

60.     At all times relevant, Defendants was an employer within the scope and definition of 42 U.S.C. § 2000e-2(a)(1) under Title VII of the Civil Rights Act and the Maryland Fair Employment Practices Act ("MFEPA") State Gov't Art. 20-611 *Workplace Harassment.*

61.     MS. HURLEY reasserts that she was subjected to severe harassment and discrimination on a regular and ongoing basis from at least December 1, 2021 through and including her suspension on July 26, 2022 and to this day.

62.     The discrimination and harassment experienced by MS. HURLEY was the result of Ms. Hurley's expression of her strongly held religious beliefs, which she made clearly known

to her Employer when she filed her religious exemption request, per Defendants' own policies, to Defendants' COVID-19 vaccination requirement. The exemption was a declaration of her faith in order to receive an official accommodation from Defendants' COVID-19 vaccination requirement. Defendants committed religious discrimination and failed to accommodate her when they rejected her multiple reasonable accommodation offers and provided no possible accommodation option to Ms. Hurley.

63.    The discrimination faced by MS. HURLEY was so severe and pervasive so as to alter the conditions of the work environment by creating a hostile environment with, for example, a persistent threat of termination and Defendants' refusal to engage in discussions regarding possible accommodation options.

64.    Upon Plaintiff filing her religious exemption and again after making Ethics reports to Defendants about the unwelcome discrimination, disparate treatment (where others received the accommodations requested by Defendants), harassment, retaliation and repeated efforts to push MS. HURLEY to act contrary to her faith. Defendants were on notice of the said unlawful employment practices.

65.    The discrimination was pervasive and made absolutely known to Defendants and to the attention of the employees of Defendants who were authorized to do something about it yet did nothing to stop it.

66.    Defendants are liable for the hostile work environment they created through the acts and omissions of their employees/managers.

67.    The foregoing acts perpetrated against MS. HURLEY by Defendants constitute acts of unlawful employment practice, in violation of §42 U.S.C., 2000e-2(a)(1) and the

Maryland Fair Employment Practices Act ("MFEPA") State Gov't Art. 20-611 *Workplace Harassment.*

68.    As a result of the foregoing unlawful employment practices perpetrated against her by Defendants, MS. HURLEY suffered humiliation, emotional distress, physical pain, suffering, and has suffered economic losses, which are a direct and proximate cause of the foregoing unlawful employment practices.

69.    MS. HURLEY informed and believes, and thereupon alleges, that Defendants' conduct as described above was intentional, willful, wanton, malicious and done in reckless disregard for the safety and well-being of MS. HURLEY .

70.    By reason thereof, MS. HURLEY is entitled to the imposition of punitive damages and attorney's fees and costs authorized by Title VII of the Civil Rights Act of 1964, as amended, and MFEPA, in a sum according to proof to be presented at trial.

### Count III—Violation of Civil Rights Act of 1964 §42 U.S.C, 2000e-3(a) – Retaliation And Maryland Fair Employment Practices Act ("MFEPA") State Gov't Art. 20-606 *Retaliation (Unlawful Employment Practices)*

71.    MS. HURLEY adopts and realleges each and every allegation of her Complaint as though fully set forth herein.

72.    This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, §42 U.S.C., 2000e-3(a) – retaliation and Maryland Fair Employment Practices Act ("MFEPA") State Gov't Art. 20-606 *Retaliation (Unlawful Employment Practices).*

73.    MS. HURLEY was discriminated and retaliated against and was subjected to unwelcome discrimination, disparate treatment (where others received the accommodations requested by Defendants ), harassment, retaliation and repeated efforts to push MS. HURLEY

to act contrary to her faith on a regular and ongoing basis December 1, 2021 through and ongoing after her suspension on July 26, 2022.

74.    MS. HURLEY was engaged in the protected activity of seeking a reasonable accommodation from the COVID-19 vaccination status requirement and seeking redress of work environment that was unwelcome discriminatory, harassing and retaliatory and in which she received disparate treatment (where others received the accommodations requested by Defendants ) and was repeatedly pushed to act contrary to her strongly held religious beliefs.

75.    The discrimination and harassment experienced by MS. HURLEY was the result of Ms. Hurley's expression of her strongly held religious beliefs, which she made clearly known to her Employer when she requested to file her religious exemption request, to Defendants' COVID-19 vaccination status and testing requirement. The exemption was a declaration of her faith in order to receive an official accommodation from Defendants 's COVID-19 vaccination requirement.  Defendants committed religious discrimination and failed to accommodate her when they rejected her multiple reasonable accommodation offers and provided no possible accommodation option to Ms. Hurley and instead suspended her from employment.

76.    The discrimination faced by MS. HURLEY was so severe and pervasive so as to alter the conditions of the work environment by creating a hostile environment with, for example, a persistent threat of termination and Defendants' refusal to engage in discussions regarding possible accommodation options.

77.    MS. HURLEY, after making Ethics reports to Defendants  about the unwelcome discrimination, disparate treatment (where others received the accommodations requested by Defendants ), harassment, and repeated efforts to push MS. HURLEY to act contrary to her

faith. Defendants  was on notice of the said unlawful employment practices.

78.    The retaliation was so pervasive and made absolutely known to Defendants  and to the attention of the employees of Defendants  who were authorized to do something about it.

79.    Defendants took materially adverse action against MS. HURLEY by failing to provide reasonable accommodation related to her strongly held religious belief and opposition to Defendants 's COVID-19 vaccination requirement, failing to address the hostile work environment made known to Defendants  through the Ethics complaint process, and ultimately terminating MS. HURLEY.

80.    Defendants are liable for the retaliation and religious discrimination they created through the acts and omissions of their employees and/or agents.

81.    The foregoing acts perpetrated against MS. HURLEY by Defendants  constitute acts of unlawful retaliation, in violation of §42 U.S.C., 2000e-3(a).

82.    As a result of the foregoing unlawful employment practices perpetrated against her by Defendants, MS. HURLEY suffered humiliation, emotional distress, physical pain, suffering, and has suffered economic losses, which are a direct and proximate cause of the foregoing unlawful employment practices.

83.    MS. HURLEY informed and believes, and thereupon alleges, that Defendants' conduct as described above was intentional, willful, wanton, malicious and done in reckless disregard for the safety and well-being of Ms. HURLEY.

84.    By reason thereof, Ms. HURLEY is entitled to the imposition of punitive damages

and attorney's fees and costs authorized by Title VII of the Civil Rights Act of 1964, as amended, and MFEPA, in a sum according to proof to be presented at trial.

**Count IV**

**Violation of Maryland Fair Employment Practices Act ("MFEPA") State Gov't Art. 20-606 – Unlawful Employment Practices - *Genetic Testing Refusal or Results Discrimination/Retaliation***

85.     Ms. HURLEY adopts and realleges each and every allegation of her Complaint as though fully set forth herein.

86.     This action is brought pursuant to the Maryland Fair Employment Practices Act ("MFEPA") State Gov't Art. 20-606 -Genetic Testing/Collection Discrimination/Retaliation *(Unlawful Employment Practices).*

87.     MS. HURLEY was discriminated and retaliated against and was subjected to unwelcome discrimination, harassment, retaliation and disparate treatment and repeated efforts to push MS. HURLEY to act contrary to her faith on a regular and ongoing basis December 1, 2021 through and ongoing after her suspension on July 26, 2022.

88.     MS. HURLEY was engaged in the protected activity of seeking a reasonable accommodation from the COVID-19 vaccination status requirement, and the Defendants' scheme to collect and track her genetic DNA or provide proof of the same, and seeking redress of work environment that was unwelcome discriminatory, harassing and retaliatory and in which she received disparate treatment (where others received the accommodations requested by Defendants ) and was repeatedly pushed to act contrary to her strongly held religious beliefs.

89.     The discrimination and harassment experienced by MS. HURLEY was the result

of Ms. Hurley's  expression of her strongly held religious beliefs, which she made clearly known to her Employer when she filed her religious exemption request, per Defendants' own policies, to Defendants' COVID-19 vaccination status and testing requirement. The exemption was a declaration of her faith in order to receive an official accommodation from Defendants 's COVID-19 vaccination requirement.  Defendants committed religious discrimination and failed to accommodate her when they rejected her multiple reasonable accommodation offers and provided no possible accommodation option to Ms. Hurley .

90.     The discrimination faced by MS. HURLEY was so severe and pervasive so as to alter the conditions of the work environment by creating a hostile environment with, for example, a persistent threat of termination and Defendants' refusal to engage in discussions regarding possible accommodation options.

91.     MS. HURLEY, after making Ethics reports to Defendants  about the unwelcome discrimination, disparate treatment (where others received the accommodations requested by Defendants ), harassment, and repeated efforts to push MS. HURLEY to act contrary to her faith. Defendants  was on notice of the said unlawful employment practices.

92.     The retaliation was so pervasive and made absolutely known to Defendants  and to the attention of the employees of Defendants  who were authorized to do something about it.

93.     Defendants took materially adverse action against MS. HURLEY by failing to provide reasonable accommodation related to her strongly held religious belief and opposition to Defendants 's COVID-19 vaccination status requirement, failing to address the hostile work environment made known to Defendants  through the Ethics complaint process, and ultimately

terminating MS. HURLEY .

94.     Defendants are liable for the retaliation and religious discrimination they created through the acts and omissions of their employees and/or agents.

95.     The foregoing acts perpetrated against MS. HURLEY by Defendants  constitute acts of unlawful retaliation, in violation of MFEPA 20-601 and 20-606 *et seq.*.

96.     As a result of the foregoing unlawful employment practices perpetrated against her by Defendants, MS. HURLEY suffered humiliation, emotional distress, physical pain, suffering, and has suffered economic losses, which are a direct and proximate cause of the foregoing unlawful employment practices.

97.     MS. HURLEY informed and believes, and thereupon alleges, that Defendants' conduct as described above was intentional, willful, wanton, malicious and done in reckless disregard for the safety and well-being of Ms. HURLEY.

98.     By reason thereof, Ms. HURLEY is entitled to the imposition of punitive damages and attorney's fees and costs authorized by MFEPA, in a sum according to proof to be presented at trial.

### Count V—Negligence

99.     Ms. HURLEY adopts and realleges each and every allegation of her Complaint as though fully set forth herein.

100.     Defendants  breached their duty as an employer with access to sensitive medical information to the Plaintiff and to ensure equitable treatment of their employees.

101.     Defendants breached their duty to respect Ms. Hurley's right to privacy and

freedom of religion by denying her religious exemption request.

102.    Defendants  breached their duty by instituting negligent employee oversight in the application of their COVID-19 policies.

103.    Defendants breached their duty to follow the Maryland and United States' Constitutions and laws to defend and protect Plaintiff's religious freedom, due process, and freedom from race and ethnic discrimination and harassment.

104.    Defendants actions and omissions were the actual and proximate causes of the harm suffered by Ms. HURLEY . But for the actions of Defendants, MS. HURLEY would not have suffered the harm she did.

105.    Ms. HURLEY suffered public humiliation and emotional harm amongst her co-workers and occupational field because of her suspension as a result of her choice to not participate in recording, archiving or preserving the COVID-19 vaccination status information regarding her protected health status.

106.    MS. HURLEY suffered both economic and non-economic harm including, but not limited to, mental and emotional suffering for the harm caused by Defendants 's refusal to allow her to use a medical or religious exemption.

107.    By reason thereof, MS. HURLEY is entitled to the imposition of punitive damages in a sum according to proof to be presented at trial.

### Count VI—Breach of Contract

108.    MS. HURLEY adopts and realleges each and every allegation of her Complaint as though fully set forth herein.

109.    Defendants  breached their contact with MS. HURLEY by suspending her without

just cause as a result of her refusal to violate her strongly held religious belief by participating in the COVID-19 vaccination status database collection.

110.    Pursuant to Restatement Second §159 of Contracts, Defendants  misrepresented their employment offer to MS. HURLEY. Additionally, Defendants misrepresented their religious tolerance towards individuals, including MS. HURLEY.

111.    Furthermore, no informed consent for the COVID-19 vaccination or testing was offered by Defendants  as required by law after the change in contract terms to mandate the vaccine pursuant to the implementation of Defendants 's COVID-19 policies.

112.    Pursuant to Restatement Second §161 of Contracts, Defendants failed to disclose material facts regarding Ms. Hurley's employment, particularly the requirement of and coercion to receive and disclose the status of receipt of COVID-19 vaccines, testing and submittal to DNA and Equity profiling and tracking, pursuant to Defendants' illegal scheme.

113.    The failure to disclose the material facts regarding Ms. Hurley's employment was an extreme and malicious attempt by Defendants to use its governmental powers to illegally and unlawfully coerce her in order to retain her employment contract with the government into disclosing her protected medical information regarding the COVID-19 vaccinations and testing and outrageous subjection to experimentation and DNA tracking in a world-wide police database, and to force her to disclose and to discriminate against her for her religious viewpoints and beliefs, and as such gives Ms. Hurley the right to seek punitive damages, attorney's fees and costs.

114.    By reason thereof, MS. HURLEY is entitled to the imposition of economic and punitive damages in a sum according to proof to be presented at trial.

**Count VII—Invasion of Privacy**

115.    MS. HURLEY adopts and realleges each and every allegation of her Complaint as though fully set forth herein.

116.    MS. HURLEY was subject to an unjustifiable intrusion into her personal life without consent. Defendants took substantial steps to inquire into her personal, private medical ethnic, national origin and religious information and to enter the same into a world-wide database.

117.    Medical information, such as vaccination status, is a private matter irrelevant to Ms. Hurley's  ability to perform in her role as a police officer.

118.    Defendants'  refusal to grant MS. HURLEY a religious exemption, but their willingness to do so for similarly situated individuals, is a blatant disregard of her religious beliefs. This action required Defendants to disclose further private information that is unwarranted.

119.    As a direct and proximate cause of the violation of Ms. Hurley's  religious freedom, free exercise, and invasion of her privacy, MS. HURLEY suffered egregiously with extreme emotional distress.

120.    By reason thereof, MS. HURLEY is entitled to the imposition of both economic and non-economic damages in a sum according to proof to be presented at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, based upon the facts to be proven at trial, Plaintiff seeks monetary relief, in an amount to be determined by the jury, plus available fees, interests and costs, and such other further and additional relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully demands a trial by jury.

## AFFIRMATION AND VERIFICATION

I solemnly affirm, under penalty of perjury, that the foregoing facts and matters are true and

correct upon my best knowledge, information and belief.

DATE: May 8, 2025                                    /s/_____ Norma E. Hurley
                                                                    Officer Norma E. Hurley


Respectfully Submitted,
THE COX LAW CENTER, LLC


By: _____
Daniel L. Cox (Federal Bar No. 28245)
Attorney for Plaintiff
The Cox Law Center, LLC
PO Box 545
Emmitsburg, MD, 21727
(p) 410-254-7000
(e) dcox@coxlawcenter.com