**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| NORMA E. HURLEY, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. CJC-25-1498 |
| HOWARD COUNTY DEPARTMENT OF POLICE, *et al.*, | * | |
| | * | |
| Defendants. | | |

**MEMORANDUM OPINION**

This case involves Plaintiff Norma E. Hurley's claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Maryland Fair Employment Practices Act ("MFEPA"), and the common law against the Howard County Department of Police (the "Department"), Howard County, Maryland (the "County"), and four County officials (the "Individual Defendants")[1] (collectively "Defendants"). Before the Court is Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment. ECF No. 18. Defendants contend that the Court lacks jurisdiction to adjudicate Ms. Hurley's claims because they are untimely and fail to state a claim for relief. ECF No. 18 at 1.[2] The issues have been briefed, and no hearing is necessary. Loc. R. 105.6. For the reasons discussed below, the Court grants the Motion.

---

[1] The Individual Defendants are Howard County Executive, Calvin Ball; Gregory Der, Chief of Police; Lisa Meyers, Former Chief of Police; and David Francis, Former Acting Chief of Police. ECF No. 1. ¶¶ 4–7.

[2] Citations to the parties' filings refer to the page number provided in the CM/ECF filing header, not the PDF pagination.

**BACKGROUND**[3]

Ms. Hurley began her employment as a law enforcement officer with the Department in 1997. ECF No. 1 ¶ 10. On December 1, 2021, Defendants established "vaccination status inquiries for COVID-19 testing policies." ECF No. 1 ¶¶ 15, 21. Ms. Hurley informed Defendants that the inquiry conflicted with her religious beliefs as a "Christian with strong religious and spiritualist beliefs regarding her body, the Temple of the Holy Spirit, and what is injected or put into her body and what her body is subjected to," including that "all persons are created in the Image of God and therefore have a[] … right to consent to any and all medical [interventions]." ECF No. 1 ¶¶ 11, 15. Ms. Hurley repeatedly "sought and requested the forms and procedures for submitting a formal religious exemption[] from the mandat[ed] COVID-19 vaccination status reporting and testing requirements and the DNA mass collection scheme." ECF No. 1 ¶ 22. When Defendants failed to provide the requested information, Ms. Hurley filed a religious exemption request in the form of a "declaration of [] faith." ECF No. 1 ¶¶ 16, 75, 89.

On December 28, 2021, Ms. Hurley offered her vaccination status to the Department verbally, which was denied. ECF No. 1-2 at 13, 26. The following day, Ms. Hurley was notified that she was under investigation for insubordination related to the Department's survey. ECF No. 1-2 at 4. On July 26, 2022, Ms. Hurley was placed on a three-day unpaid suspension from her

---

[3] This factual recitation is drawn from the allegations in Plaintiff's Complaint and the exhibit attached and expressly incorporated into the Complaint. ECF Nos. 1, 1-2. Pleadings may include "documents attached or incorporated into the complaint." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."). Therefore, the Petition for Writ of Certiorari to the Supreme Court of Maryland that is attached to Ms. Hurley's Complaint is treated as a part of the pleading. For purposes of deciding the motion to dismiss, the allegations contained in the Complaint are accepted as true. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011); *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 702 (4th Cir. 2016).

employment. ECF Nos. 1 ¶¶ 10, 25; 1-2 at 6. On or about July 27, 2022, Ms. Hurley also appeared before the "Howard County trial board committee," which made "certain findings and … entered its decision." ECF No. 1-2 at 5. Ms. Hurley then challenged that administrative decision in a series of appeals before Maryland state courts. ECF No. 1-2 at 5; *see In the Matter of Norma Hurley*, C-13-CV-22-000930 (appeal to Howard County, Maryland Circuit Court resolved on respondent's motion to dismiss on February 22, 2023); *In the Matter of Norma Hurley*, ACM-REG-0095-2023 (appeal to Appellate Court of Maryland dismissed on July 3, 2023 for appellant's failure to file a brief); *In the Matter of Norma Hurley*, SCM-PET-0194-2023 (Petition for Writ of Certiorari before the Supreme Court of Maryland denied on November 20, 2023).

On January 24, 2024, Ms. Hurley cross-filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and the Maryland Commission on Civil Rights ("MCCR"). ECF No. 1 ¶ 41. She received a right-to-sue letter from the EEOC on February 8, 2025, and filed suit in this Court on May 8, 2025. ECF No. 1 ¶ 42.

## LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint need not contain "detailed factual allegations" to satisfy the Rule 8(a)(2) pleading standard, it must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 555, 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard … demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). Bald accusations, mere speculation, labels and conclusions, or "a formulaic

recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555; *Walton v. Harker*, 33 F.4th 165, 175 (4th Cir. 2022) (citing *Iqbal*, 556 U.S. at 679).

Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) provides that a defendant may move to dismiss a complaint on the ground that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To determine whether the Rule 8(a)(2) pleading standard is met, the Court separates the complaint's legal conclusions from the factual allegations. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012). The court then accepts the complaint's factual allegations as true and draws all reasonable inferences from the facts in favor of the plaintiff to determine whether the plaintiff is entitled to the legal remedy sought. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). But if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (cleaned up).

Where, as here, the moving party attaches exhibits to a motion to dismiss, the Court must decide whether to convert the motion to dismiss into a motion for summary judgment. The court may consider extrinsic documents without converting the motion "so long as [the documents] are integral to the complaint and authentic." *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014). A document is integral to the complaint if it, by its "very existence, and *not the mere information it contains*, gives rise to the legal rights asserted." *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (emphasis in original) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)) (internal quotations omitted). In addition, the court may take judicial notice of

matters of public record, such as documents from state court proceedings, that constitute "adjudicative facts" under Federal Rule of Evidence 201 if they are "not subject to reasonable dispute." *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015); *Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244, 246 n.2 (D. Md. 2013) (reviewing docket sheet from state foreclosure proceeding) (citing *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).

Should a court consider exhibits that do not fall into these categories, it must treat the motion as a motion for summary judgment." *Woodbury v. Victory Van Lines*, 286 F. Supp. 3d 685, 692 (D. Md. 2017); *see also* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Before converting a motion to dismiss to a motion for summary judgment, the court must provide the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).  A reasonable opportunity requires that the nonmoving party receive "some indication that the court is treating a Rule 12(b)(6) motion as a motion for summary judgment" and a "reasonable opportunity for discovery' to obtain information essential to oppose the motion." *Woodbury*, 286 F. Supp. 3d at 692–93 (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)).

Defendants attach three affidavits from Howard County employees attesting to the County's COVID-19 testing and vaccination policies, the human resources process concerning Ms. Hurley's disciplinary action, and the absence of a statutory notice submitted by Ms. Hurley prior to filing suit. ECF Nos. 1-2, 1-3, 1-4. The affidavits of third parties submitted by Defendants are not integral to the Complaint. Therefore, if the Court were to consider them, it would convert the motion to dismiss into a motion for summary judgment. I decline to consider

Defendants' evidence here because the parties have not had an opportunity to engage in any discovery. *See E.I. du Pont de Nemours & Co.*, 637 F.3d at 448 (stating that converting a motion to dismiss into one for summary judgment "is not appropriate where the parties have not had an opportunity for reasonable discovery"). Moreover, Ms. Hurley has invoked Federal Rule of Civil Procedure 56(d), stating in her opposition that she "has had no opportunity to conduct discovery" and that summary judgment is premature.[4] ECF No. 23-1 at 5. Given the procedural posture of Defendants' Motion and the "complete discretion" afforded to the Court in this regard, *see Woodbury*, 286 F. Supp. 3d at 693, I will reject Defendants' affidavit, and will also strike from consideration Ms. Hurley's own affidavit, which she attached to her response in opposition to Defendants' Motion. ECF No. 23-2.

### DISCUSSION

Ms. Hurley's Complaint contains seven counts: religious discrimination, in violation of Title VII and MFEPA (Count I); hostile work environment on the basis of religion, in violation of Title VII and MFEPA (Count II); retaliation, in violation of Title VII and MFEPA (Count III); genetic discrimination, in violation of MFEPA (Count IV); negligence (Count V); breach of contract (Count VI); and invasion of privacy (Count VII). ECF No. 1. Ms. Hurley asserts each count against all Defendants. ECF No. 1.

Defendants move to dismiss the Complaint in its entirety. ECF No. 18. Defendants raise both procedural and substantive challenges to Ms. Hurley's claims. Procedurally, Defendants

---

[4] While I am declining to convert Defendants' motion to dismiss into a motion for summary judgment, I note that Ms. Hurley's statement in her memorandum regarding the need for additional discovery fails to comply with the specific requirements of Federal Rule of Civil Procedure 56(d). Ms. Hurley has not articulated "specific[] reasons" by affidavit or declaration why she cannot present facts essential to justify her opposition. Fed. R. Civ. P. 56(d). Notwithstanding this omission, I find that, given the early stage of the proceedings, summary judgment is premature.

argue that: (1) the Title VII and MFEPA counts are time-barred; (2) the common law tort claims are barred due to Ms. Hurley's failure to provide the notice required by the Local Government Tort Claims Act ("LGTCA"); (3) the Individual Defendants are improper parties as to the Title VII and MFEPA claims in Counts I through III; and (4) the County, not the Department, is the only institutional entity with the legal capacity to be sued. ECF No. 18-1 at 1, 7–10. Substantively, Defendants contend that all seven counts fail to state a claim under Rule 12(b)(6). ECF No. 18-1 at 10–29. Ms. Hurley counters that the Complaint is timely and that the pleading standard for all counts has been met. ECF No. 23.

The Court first considers Defendants' procedural arguments before addressing the merits of each count in turn, below.

## I.  Apart From the Hostile Work Environment Claim Under MFEPA, the Title VII and MFEPA Claims Are Time-Barred.

Defendants argue that Ms. Hurley failed to timely exhaust her administrative remedies as to the Title VII and MFEPA claims in Counts I through III. I agree that such claims are untimely, with the exception of the hostile work environment claim pursuant to MFEPA (Count II).

### A.  The Title VII claims for religious discrimination, retaliation, and hostile work environment are untimely.

Defendants argue that Ms. Hurley's Title VII claims are untimely because she failed to file her charge with the EEOC and MCCR within 300 days of the allegedly discriminatory conduct. ECF No. 18-1 at 8–10. Ms. Hurley responds that her Title VII claims are timely because they are based on a "continuing course of discrimination and retaliation" that extends the limitations period, and even if the claims are untimely, the Court should find that equitable tolling excuses any delay. ECF No. 23-1 at 6–7. Ms. Hurley's arguments are unavailing.

### 1.    Religious discrimination and retaliation

Before filing suit under Title VII, a plaintiff must first exhaust her administrative remedies by filing a charge with the EEOC or appropriate state or local agency. *See Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 543 (2019). In Maryland, a charge must be filed within 300 days of the alleged unlawful employment practice. *Van Slyke v. Northrop Grumman Corp.*, 115 F. Supp. 2d 587, 592 (D. Md. 2000), *aff'd*, 17 F. App'x 154 (4th Cir. 2001) (citing 42 U.S.C. § 2000e–5(e)(1)). A complainant is entitled to a "right-to-sue" notice from the EEOC within 180 days of filing a charge, and suit must be filed within 90 days of receipt of the notice. *Fort Bend Cnty.*, 587 U.S. at 545 (citing 42 U.S.C. § 2000e–5(f)(1)).

A Title VII plaintiff alleging "discrete discriminatory or retaliatory acts must file [her] charge within the appropriate time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002). Each discrete act of discrimination or retaliation, "such as termination, failure to promote, denial of transfer, or refusal to hire … starts a new clock for filing charges alleging that act." *Id.* at 114, 113.  Discrete acts "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. However, those time-barred acts may be used "as background evidence in support of a timely claim." *Id*.

Ms. Hurley cross-filed her charge with the EEOC and MCCR on January 24, 2024. ECF No. 1 ¶¶ 41–42. As a result, she cannot pursue any Title VII claim based on a discrete act of discrimination or retaliation occurring more than 300 days before the filing date. Here, that deadline is March 30, 2023. Yet, all the discrete acts described in Ms. Hurley's Complaint occurred in 2022 or earlier—well outside the statutory limitations period. For example, Ms. Hurley alleges that the Department began the discriminatory COVID-19 vaccination status inquiries on December 1, 2021, which she refused to take in written form, leading to her

unlawful suspension from the Department on July 26, 2022. ECF No. 1 ¶¶ 10, 25. These are the only concrete dates Ms. Hurley alleges in the Complaint relating to Defendants' discriminatory conduct.

Ms. Hurley further alleges, in general terms, that the discrimination and retaliation by Defendants is ongoing in nature, *see* ECF No. 1 ¶¶ 16–18, 21–23, 39; however, it is well settled that a theory of continuing violation does *not* apply to discrete acts of discrimination like the religious discrimination Ms. Hurley alleges in Count I and the retaliation she alleges in Count III. *See, e.g.*, *Hartle v. Transplant Genomics, Inc.*, Civil Action No. RDB-24-3215, 2025 WL 2676536, at *4 (D. Md. Sept. 18, 2025) ("*Morgan* squarely prohibits the use of the continuing violation doctrine for discrete discriminatory acts, pleaded in this case in the form of . . . age discrimination . . . and retaliation"); *Corrigan v. Balt. Police Dep't*, Civil Action No. ELH-24-3497, 2026 WL 73800, at *22 (D. Md. Jan. 9, 2026) ("The continuing violation theory that applies to a hostile work environment claim does not apply to discrete discriminatory acts.").

Counts I and III are untimely and Ms. Hurley's theory of ongoing, or continuing harm with respect to these claims is inapplicable. Ms. Hurley cannot generally allege a pattern of repeated conduct to save an otherwise untimely discrimination or retaliation claim. "The continuing violation doctrine does not exist to give employees a second chance, after they have allowed a legitimate Title VII claim to lapse." *Okanes v. Soc'y for Worldwide Interbank Fin. Telecomm. SC*, No. 1:21-CV-0285, 2021 WL 9598562, at *2 (E.D. Va. June 7, 2021).

### 2.    Hostile work environment

Similarly, Ms. Hurley's Title VII claim for hostile work environment on the basis of religious discrimination is untimely. Unlike claims involving solely discrete acts, hostile work environment claims may include allegations that would otherwise be untimely because they "are

different in kind from discrete acts" in that "[t]heir very nature involves repeated conduct" and "occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Morgan*, 536 U.S. at 115; *see Yampierre v. Balt. Police Dep't*, Civil Action No. ELH-21-1209, 2022 WL 3577268, at *23 (D. Md. Aug. 18, 2022). Under the continuing violation doctrine, a hostile work environment claim "will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Morgan*, 536 U.S. at 122.

Here, Ms. Hurley fails to allege *any* one act within the applicable limitations period. In fact, nowhere in the Complaint or the supporting exhibit does Ms. Hurley describe a timely act of harassment. This omission is fatal, and Ms. Hurley's general allegation that "excessive workplace bullying" and "severe harassment" has continued through the present day does not suffice. ECF No. 1 ¶¶ 19, 58–70.

**B.    The MFEPA claims for religious discrimination, retaliation, and genetic information discrimination are also untimely.**

Mirroring Title VII, MFEPA also requires a plaintiff to exhaust administrative remedies before filing suit. *See* Md. Code Ann., State Gov't §§ 20-1004(c), 20-1013(a)(1)(i). Exhaustion of an employment law claim may be satisfied by filing a complaint with a federal or local human relations commission. Md. Code Ann., State Gov't § 20-1004(c)(2)(i)–(ii). A complaint before a federal human relations commission must be filed within six months (180 days) of the unlawful employment practice, while a complaint before a local human relations commission must be filed within 300 days. Md. Code Ann., State Gov't § 20-1004(c)(2)(ii). If the alleged unlawful employment practice is harassment, the time for filing a complaint before a local human relations commission is extended to two years. *See* Md. Code Ann., State Gov't § 20-1004(c)(3)(i)–(ii); *see also Green v. iMentor, Inc.*, Civil Action No. RDB-24-2567, 2025 WL 2299432, at *6 n.10

10

(D. Md. Aug. 8, 2025) (discussing differing administrative exhaustion deadlines under MFEPA), *reconsideration denied*, Civil Action No. RDB-24-2567, 2025 WL 3077594 (D. Md. Nov. 4, 2025).

MFEPA permits a complainant to file a civil lawsuit if: (1) the complainant has timely-filed an administrative charge or complaint; (2)  a period of 180 days has elapsed since the filing of the administrative charge or complaint; and (3) the civil lawsuit is filed "within two years after the alleged unlawful employment practice occurred," or three years for harassment. Md. Code Ann., State Gov't § 20-1013(a)(1)(ii). The time for filing a civil lawsuit is tolled while an administrative charge or complaint is pending. Md. Code Ann., State Gov't § 20-1013(a)(1)(iii)(1)–(2); (a)(2); *Adkins v. Peninsula Reg'l Med. Ctr.*, 224 Md. App. 115, 133 n.9 (2015), *aff'd*, 448 Md. 197 (2016). "Where a plaintiff fails to file MFEPA claims within two years of the alleged discrimination or retaliation, the claims are time barred and must be dismissed." *Lowman v. Md. Aviation Admin.*, Civil Action No. JKB-18-1146, 2019 WL 133267, at *3 (D. Md. Jan. 8, 2019) (citing *McCray v. Md. Dep't of Transp.*, 662 F. App'x 221, 225 (4th Cir. 2016)); *Hobson v. Transit Emps. Health & Welfare Fund, LLC*, Civil Action No. PX-25-0146, 2025 WL 2444158, at *3 (D. Md. Aug. 25, 2025) ("Where a complaint on its face shows that the claims accrued outside the limitations period, dismissal is appropriate." (internal citations omitted)).

Ms. Hurley's religious discrimination, retaliation, and genetic discrimination claims under MFEPA are untimely because, as noted above, she did not cross-file her charge with the EEOC and MCCR until January 24, 2024, which is beyond the 300-day limitations period. Accordingly, these claims are time-barred.

As to Ms. Hurley's hostile work environment claim, MFEPA extends the time to file a complaint with a local human relations commission from 300 days to two years. Md. Code Ann., State Gov't § 20-1004(c)(3)(ii). This extends the statutory limitations period and allows Ms. Hurley to pursue a claim based on acts dating back to January 24, 2022. Because Ms. Hurley alleges at least one discriminatory act during the actionable period—her suspension on July 26, 2022—she falls within the two-year period for filing an administrative complaint concerning harassment, and because she filed the present lawsuit on May 8, 2025, she falls within the three-year period for filing a civil suit concerning harassment. Therefore, the hostile work environment claim under MFEPA survives Defendants' procedural challenge.

### C.    The Court declines to apply equitable tolling here.

All of Ms. Hurley's Title VII claims are untimely and all but one of her MFEPA claims is untimely. The only avenue by which these claims will survive on timeliness grounds is the application of equitable tolling, which I do not find appropriate under the circumstances.

The timely filing of an administrative complaint "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Morgan*, 536 U.S. at 113. The doctrine of equitable tolling "allow[s] for exceptions to the strict enforcement of deadlines" and "restore[s] a claimant's right to review even though she otherwise would be time-barred." *Gayle v. United Parcel Serv., Inc.*, 401 F.3d 222, 226 (4th Cir. 2005). The doctrine is used "sparingly" and in "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000) (noting that equitable tolling "must be guarded

and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes").

Equitable tolling is appropriate when a plaintiff establishes "(1) that [s]he has been pursuing h[er] rights diligently, and (2) that some extraordinary circumstance stood in h[er] way and prevented timely filing." *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 548 (4th Cir. 2019) (quoting *Menominee Indian Tribe v. United States*, 577 U.S. 250, 255 (2016)). "[A] plaintiff's pro se status does not, on its own, trigger equitable tolling." *Levere v. Signature Props., LLC*, Civil Action No. ELH-21-1929, 2022 WL 2159837, at *12 (D. Md. June 14, 2022) (collecting cases). And ignorance of the law is also not a basis for tolling. *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004). "Equitable tolling may be proper when the conduct of the defendant led to the plaintiff being unaware of a cause of action or otherwise unable to timely file, but it does not require misconduct by the defendant." *Roberts v. Am. Neighborhood Mort. Acceptance Co.*, Civil Action No. JKB-17-0157, 2017 WL 3917011, at *4 (D. Md. Sept. 6, 2017) (citing *Aikens v. Ingram*, 524 F. App'x 873, 879 (4th Cir. 2013)).

For instance, an employer's affirmative promise to a complainant that the "problem could be corrected without the necessity of" going to court, and reiterating that sentiment after failing to resolve the matter has been found as a proper basis for equitable tolling. *Dement v. Richmond, Fredericksburg & Potomac R. Co.*, 845 F.2d 451, 456 (4th Cir. 1988). Similarly, "where a defendant's representations hide the actual circumstances of discharge, mislead, or conceal a potential cause of action, equitable tolling may apply." *Prelich v. Med. Res., Inc.*, 813 F. Supp. 2d 654, 666–67 (D. Md. 2011); *Upshaw v. Consumer Prod. Safety Comm'n*, Civil Action No. PWG-12-3130, 2014 WL 1896740, at *6 (D. Md. May 12, 2014) (applying equitable tolling to plaintiff's claims where plaintiff believed employer's non-discriminatory justification for

rescission of employment offer and thereafter timely pursued administrative review). However, "when the evidence shows that a plaintiff has knowledge of pretext at the time of termination, equitable tolling is inappropriate." *Prelich*, 813 F. Supp. 2d at 666–67.

Ms. Hurley urges the Court to excuse any delay in the filing of her administrative complaints with the EEOC and MCCR because Defendants both "obstructed her ability to file earlier by refusing to provide formal procedures for . . . protecting her Title VII rights" and "actively encouraged reliance on internal grievance processes." ECF No. 23-1 at 7. She also argues that Defendants actively concealed the "true basis for their adverse actions," which in turn "prevented Ms. Hurley from recognizing the discriminatory nature of [D]efendants' conduct within the limitations period." ECF No. 23-1 at 7. Defendants respond that Ms. Hurley's argument is both conclusory and contradictory, devoid of any information regarding the alleged conduct, actors, and chronology to support a finding that equitable tolling is warranted. ECF No. 25 at 3.

For several reasons, the Complaint's limited allegations do not establish that "some extraordinary circumstance stood in [Ms. Hurley's] way and prevented timely filing," justifying equitable tolling. *Edmonson*, 922 F.3d at 548. First, Ms. Hurley fails to plausibly allege that Defendants obstructed her ability to file an EEOC/MCCR complaint or otherwise made misrepresentations that caused her to miss the applicable 300-day or two-year filing deadline. Rather, she asserts that sometime between December 1, 2021, and her suspension on July 26, 2022, she repeatedly asked for and was denied information regarding an accommodation. ECF No. 1 at ¶ 22. And yet, Ms. Hurley also alleges that sometime in this same period she submitted her own accommodation request in the form of a declaration of faith. ECF No. 1 at ¶¶ 16, 75, 89. Unlike other cases in this District where equitable tolling was appropriate, there are no

allegations here that Defendants claimed they would "correct the problem" but failed to do so, running the limitations period. *Dement*, 845 F.2d at 456.

Second, Ms. Hurley claims that Defendants hid the true basis for their actions, but she provides no allegations concerning when she finally "recogniz[ed] the discriminatory nature of [D]efendants' conduct." ECF No. 23-1 at 7; *Cannon v. E. Corr. Inst.*, Civil Action No. DKC 20-3196, 2022 WL 1187858, at *5 (D. Md. Apr. 21, 2022) (rejecting equitable tolling argument where plaintiff waited four years after she had "put ... together" that she had a claim); *Baker v. Boeing Co.*, Civil Action No. 2:18-02574-RMG-MGB, 2021 WL 2819460, at *12 (D.S.C. May 19, 2021) (rejecting equitable tolling argument where plaintiff filed EEOC charge almost a year after "epiphany" that he had a claim). Ms. Hurley does not offer any explanation regarding what information she learned between her suspension and the filing of her EEOC/MCCR complaint years later that would warrant tolling.

Finally, Ms. Hurley's efforts to appeal her suspension through the Department's internal procedures "do[] not toll the running of the limitations period." *Mezu v. Morgan State Univ.*, 367 F. App'x 385, 389 (4th Cir. 2010) (stating that professor's internal appeal through university concerning denial of promotion did not warrant tolling because "Defendants' actions cannot be construed to have misled [plaintiff] into missing the filing deadlines") (collecting cases); *see, e.g.*, *Effland v. Balt. Police Dep't*, Civil Action No. MJM-20-3503, 2024 WL 4349693, at *5 (D. Md. Sept. 30, 2024); *Delaware State Coll. v. Ricks*, 449 U.S. 250, 261–62 (1980) ("[W]e already have held that the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods"). Therefore, Ms. Hurley's decision to appeal her suspension is not a basis for tolling the time to file her EEOC/MCCR complaint.

Accordingly, save for the hostile work environment claim under MFEPA, Counts I, II, and III are dismissed as untimely. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (affirming that a statute of limitations defense can be resolved on a motion to dismiss where the time bar is apparent from the face of the complaint); *Cepada v. Bd. of Educ. of Balt. Cnty.*, Civil Action No. WDQ-10-0537, 2010 WL 3824221, at *3 (D. Md. Sept. 27, 2010) ("[T]he plaintiff bears the burden of establishing the timeliness of the filing of her complaint whe[n] it is contested by the defendant.").

## II.    Ms. Hurley Failed to Provide the Required LGTCA Notice Regarding Her Common Law Tort Claims.

Defendants also argue that Ms. Hurley's negligence and invasion of privacy claims are barred for failure to provide notice under the LGTCA.[5] ECF No. 18-1 at 24–25. Ms. Hurley raises three arguments in response. First, she contends that her claims are exempt from the notice requirement because they are "grounded in civil rights and constitutional violations." ECF No. 23-1 at 15. Second, she argues that Defendants had actual notice of her claims through her many "accommodation requests . . . internal complaints, and her EEOC charge filed on January 24, 2024." ECF No. 23-1 at 16. Finally, she states that whether the LGTCA applies, and whether Defendants were on notice, are factual questions that are inappropriate for resolution at the motion to dismiss stage. ECF No. 23-1 at 16. Here, too, Ms. Hurley's arguments fail.

---

[5] The court notes that claims under MFEPA are also subject to compliance with the notice provisions of the LGTCA. *Hine v. Prince George's Cnty.*, Civil Action No. TDC-20-2929, 2021 WL 5882615, at *3 (D. Md. Dec. 9, 2021) ("This requirement applies to any tort action for unliquidated damages, including claims for violations of state statutes such as the MFEPA."); *Morey v. Carroll Cnty.*, Civil Action No. ELH-17-2250, 2018 WL 2064782, at *20 (D. Md. May 3, 2018) ("Plaintiff may bring an employment discrimination claim under MFEPA … provided that plaintiff furnished the requisite notice, as required by the Local Government Tort Claims Act."). Because Defendants did not raise this issue in their motion to dismiss, the Court declines to opine on the sufficiency of notice under the LGTCA as to Ms. Hurley's MFEPA claims.

The LGTCA requires that a plaintiff seeking damages against a local government or its employees must provide written notice of the claim within one year of the injury. Md. Code Ann., Cts. & Jud. Proc. § 5-304(b)(1); *Rios v. Montgomery Cnty.*, 157 Md. App. 462, 480 (2004) ("In contrast to the tolling of limitations, nothing in the LGTCA expressly provides for tolling the notice period."), *aff'd*, 386 Md. 104 (2005). The notice provision "applies to all torts without distinction, including intentional and constitutional torts." *Lanford v. Prince George's Cnty.*, 199 F. Supp. 2d 297, 303 (D. Md. 2002) (quoting *Thomas v. City of Annapolis*, 113 Md. App. 440, 457 (1997)). The notice "shall state the time, place, and cause of the injury" and shall be delivered "in person or by certified mail, return receipt requested." Md. Code Ann., Cts. & Jud. Proc. § 5-304(b)(2), (c)(1). For claims against Howard County, the claimant must provide written notice to the County Executive. Md. Code Ann., Cts. & Jud. Proc. § 5-304(c)(3)(ii). "The purpose of the notice requirement is to have the claimant furnish the municipal body with sufficient information to permit it to make an investigation in due time, sufficient to ascertain the character and extent of the injury and its responsibility in connection with it." *Saunders v. Balt. City Police Dep't*, Civil Action No. CCB-19-0551, 2020 WL 1505697, at *5 (D. Md. Mar. 30, 2020).

Strict compliance with the notice provisions is not always required. *Renn v. Bd. of Comm'rs of Charles Cnty.*, 352 F. Supp. 2d 599, 603 (D. Md. 2005); *Corrigan*, 2026 WL 73800, at *15. Substantial compliance may suffice if the plaintiff: (1) made an effort to provide the requisite notice; (2) did in fact give notice; (3) provided the required notice of facts giving rise to the claim in a timely manner; and (4) the notice fulfilled the Act's purpose of "apprising the local government of its possible liability at a time when [it] could conduct its own investigation." *Truant v. Persuhn*, Civil Action No. RDB-23-0579, 2023 WL 8600552, at *7 (D. Md. Dec. 12,

17

2023) (internal citations and quotations omitted); *cf. Morris v. Nicholson*, Civil Action No. RWT-09-2726, 2010 WL 3245404, at *6 (D. Md. Aug. 17, 2010) (holding that Plaintiff did not establish constructive notice in part because Defendants were not "on notice of the *specific nature of Plaintiff's claims*" (emphasis added)); *Saunders*, 2020 WL 1505697, at *5 (same). Notably, written notice is not required if "within 1 year after the injury, the defendant local government has actual or constructive notice of: (1) The claimant's injury; or (2) The defect or circumstances giving rise to the claimant's injury." Md. Code Ann., Cts. & Jud. Proc. § 5-304(e).

"[N]otice is a condition precedent to the right to maintain an action for damages, and compliance with the notice provision should be alleged in the complaint as a substantive element of the cause of action." *Renn*, 352 F. Supp. 2d at 603. However, if the plaintiff establishes good cause for their failure to provide the requisite notice, "the court may entertain the suit even though the required notice was not given." Md. Code Ann., Cts. & Jud. Proc. § 5-304(d); *Johnson v. Balt. Police Dep't*, 452 F. Supp. 3d 283, 317 (D. Md. 2020) (clarifying that while § 5-304(d) states that a plaintiff must file a motion to establish good cause, they may also raise a good cause argument in response to a motion to dismiss or summary judgment) (collecting cases). Good cause is established if the plaintiff "prosecuted [the] claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances."[6] *Heron v. Strader*, 361 Md. 258, 271 (2000). If good cause is established, the

---

[6] Factors the Court may consider in determining whether good cause is established include: "(1) excusable neglect or mistake (generally determined in reference to a reasonably prudent person standard), (2) serious physical or mental injury and/or location out-of-state, (3) the inability to retain counsel in cases involving complex litigation, (4) possibly ignorance of the statutory notice requirement or (5) misleading representations made by representative of the local government." *Bagby v. Prince George's Cnty.*, Civil Action No. RWT-12-0537, 2012 WL 3867329, at *5 (D. Md. Sept. 5, 2012) (citing *Wilbon v. Hunsicker*, 172 Md. App. 181 (2006)). Because Ms. Hurley did not attempt to establish good cause, the Court declines to address it here.

burden shifts to the defendant to "affirmatively show that its defense has been prejudiced by lack of required notice." *Id*. at 270.

Significantly, Ms. Hurley does not allege compliance with the LGTCA in her Complaint. ECF No. 1. While this deficiency is not necessarily fatal, she makes no argument to establish good cause why the requirement should be waived. "[S]imply awaiting resolution of the internal affairs investigation into his complaint does not constitute good cause." *Isley v. Prince George's Cnty.*, Civil Action No. AW-01-0925, 2001 WL 589994, at *3 (D. Md. June 1, 2001). None of the three arguments Ms. Hurley raises to exempt her tort claims from the notice requirement, or to delay resolution of the issue, carries the day.

First, it is well established that the LGTCA's notice requirement "applies to all torts without distinction, including intentional and constitutional torts." *Lanford*, 199 F. Supp. 2d at 303 (quoting *Thomas*, 113 Md. App. at 457). *Espina v. Jackson*, does not hold otherwise. 442 Md. 311 (2015) (holding that the LGTCA's damages cap applies to constitutional torts and, in support, citing cases in which other provisions within the LGTCA, including the notice provision, have been found to apply to constitutional torts). Second, even assuming that Defendants were put on notice of Ms. Hurley's employment-law related claims through her participation in an administrative appeal, there is nothing to indicate that Defendants had actual notice of her *negligence and invasion of privacy claims. See Luy v. Balt. Police Dep't,* 326 F. Supp. 2d 682, 693 (D. Md. 2004) (assuming that plaintiff's administrative complaints concerning unlawful employment practices satisfied "substantial compliance" with LGTCA, there is no allegation that the complaints provide any notice of plaintiff's defamation claim), *aff'd*, 120 F. App'x 465 (4th Cir. 2005). Finally, whether the LGTCA applies to Ms. Hurley's tort claims in the first instance is not a fact-intensive question that requires discovery, as Ms. Hurley argues.

Rather, it is a well-settled legal question that Maryland courts have answered in the affirmative. Moreover, at the motion to dismiss stage, Ms. Hurley need only plead compliance with the LGTCA's notice requirement. As her Complaint is completely devoid of any mention of the required notice under the LGTCA—whether actual or constructive—discovery on the issue is inappropriate at this juncture. *See Hansen v. City of Laurel*, 420 Md. 670, 694 ("[T]he LGTCA creates a procedural obligation that a plaintiff must meet in filing a tort action. A plaintiff must not only satisfy the notice requirement strictly or substantially, but also plead such satisfaction in his/her complaint.").

Accordingly, the Court shall grant Defendants' Motion to Dismiss at to Counts V and VII.

**III.    The Individual Defendants Are Not Proper Parties as to Ms. Hurley's Title VII and MFEPA Claims in Counts I–IV and the Department is Not a Party Subject to Suit.**

In their third procedural challenge, Defendants assert that Ms. Hurley may not sue the Individual Defendants under Title VII and MFEPA, and that the Department is not a legal entity capable of being sued. While Ms. Hurley concedes that the Individual Defendants cannot be liable under Title VII, she counters that they may be held liable under MFEPA for "aiding and abetting." ECF No. 21-1 at 5–6. She also argues that the Department is a properly-named defendant, and, if not, the Court should refrain from dismissing the Department before she has had an opportunity to conduct discovery to determine whether, and to what extent, the Department's liability overlaps with the liability of the County. ECF No. 21 at 19–20. I disagree and find that the Individual Defendants and the Department are not proper parties and shall be dismissed.

Employees are not liable in their individual capacities under Title VII or MFEPA because they do not qualify as "employers" under either statute. *See, e.g.*, *Lewis v. Senior Lifestyle*, Civil

Action No. GLR-23-43, 2023 WL 8478901, at *1 n.3 (D. Md. Dec. 7, 2023) (stating that plaintiff "asserts Title VII claims, and the only proper defendant in a Title VII case is the employer … not its individual employees."); *Ensor v. Jenkins*, Civil Action No. ELH-20-1266, 2021 WL 1139760, at *18–19 (D. Md. Mar. 25, 2021) (noting that only employers are liable under Title VII because "individual liability would improperly expand the remedial scheme crafted by Congress" (internal citation omitted)); *Brown v. Balt. Police Dep't*, Civil Action No. RDB-11-0136, 2011 WL 6415366, at *14 (D. Md. Dec. 21, 2011) (citing *Lissau v. S. Food Servs., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998) (dismissing both Title VII and analogous MFEPA claims against Plaintiff's supervisors with prejudice).

Conversely, official capacity suits only exist in the context of suits against government officials and "generally represent only another way of pleading an action against an entity of which an officer is an agent" and thus is, "in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *see Ensor*, 2021 WL 1139760, at *19 (finding that Sheriff could be sued in his official capacity as plaintiff's employer under Title VII and MFEPA because County Sheriff's Office was not suable entity); *Chambers v. Sheppard Pratt Health Sys.*, Civil Action No. SAG-24-2316, 2025 WL 1237358, at *5 (D. Md. Apr. 29, 2025).

As the caselaw makes plain, Ms. Hurley cannot maintain Title VII or MFEPA claims against the Individual Defendants, all of whom are County officials sued in their "individual and professional capacities." *See* ECF No. 1. Nor is suit against the Individual Defendants proper under Ms. Hurley's "aiding and abetting" theory. This Court has recognized that there is no private right of action for "aiding and abetting" a MFEPA claim. *Chambers*, 2025 WL 1237358, at *7. Moreover, Ms. Hurley does not even allege in her Complaint that the Individual

21

Defendants aided and abetted, and she cannot amend her Complaint by raising the allegation for the first time in her briefing. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy."); *E.I. du Pont de Nemours & Co.*, 637 F.3d at 449 ("[S]tatements by counsel that raise new facts constitute matters beyond the pleadings and cannot be considered on a Rule 12(b)(6) motion."). Because Ms. Hurley cannot assert a Title VII or MFEPA claim against the Individual Defendants, such claims are dismissed with prejudice.

The Department is also an improper party. "County police departments are agents of the State and should not be viewed as separate legal entities." *Hines v. French*, 157 Md. App. 536, 573 (2004) (affirming trial court's finding that "[p]olice [d]epartments are not legally cognizable entities subject to suit in [their] own name" and concluding that claims against police department are essentially claims against county). Therefore, "Howard County is the proper named party because the Howard County Police Department is an administrative unit of Howard County." *Moore v. Howard Cnty. Police Dep't*, Civil Action No. CCB-10-1430, 2010 WL 4722043, at *1 n.1 (D. Md. Nov. 15, 2010); *see also Johnson v. Anne Arundel Cnty. Police Dep't*, Civil Action No. RDB-24-2311, 2025 WL 2030233, at *6 (D. Md. July 21, 2025) (finding that county, rather than county police department, is the proper entity to be sued); *Savage v. Mayor & City Council, Salisbury, MD*, Civil Action No. CCB-08-3200, 2009 WL 1119087, at *3 (D. Md. Apr. 22, 2009) (finding that Salisbury Police Department was not entity amenable to suit).

Because Howard County is the entity subject to suit and is already a named Defendant in this action, there is no basis upon which to allow an official capacity suit to proceed against any of the Individual Defendants. Furthermore, for the reasons stated above, because the Department

is not a separate legal entity for purposes of suit, it shall be dismissed from this action with prejudice.

**IV.    Notwithstanding the Timeliness Issues, Ms. Hurley Fails to State a Claim for Relief as to All Claims Except the Retaliation Claim.**

Turning to the merits of Ms. Hurley's claims, even if this Court were to find that Ms. Hurley's claims were timely, the remaining counts fail to state a claim for relief, except for the retaliation claim in Count III. For completeness, I analyze the merits of each claim—notwithstanding the timeliness issues—below.

**A.    Ms. Hurley's Title VII and MFEPA claims**

The Court will analyze Ms. Hurley's Title VII claims together with her MFEPA claims. MFEPA is the state law analogue to Title VII, and is "governed by the same analytical framework." *Brown v. Bratton*, No. 21-1998, 2022 WL 17336572, at *5 (4th Cir. Nov. 30, 2022); *see also Haas v. Lockheed Martin Corp.*, 396 Md. 469, 481 (2007) (Maryland courts "traditionally seek guidance from federal cases in interpreting [MFEPA]"); *Lowman*, 2019 WL 133267, at *4 (citing *Hawkins v. Leggett*, 955 F. Supp. 2d 474, 496–97 (D. Md. 2013)) ("Courts judge discrimination and retaliation claims brought under MFEPA by the same standards as those same claims brought under Title VII.").

**1.    Religious Discrimination under Title VII and MFEPA**

Defendants assert that Ms. Hurley has failed to state a prima facie claim for religious discrimination under either the disparate treatment or failure to accommodate theories. ECF No. 18-1 at 10–15. I agree.

Title VII prohibits an employer from discriminating against "any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's … religion." 42 U.S.C. § 2000e–2. MFEPA prohibits the same. Md. Code Ann.,

State Gov't § 20-606(a)(1)(i). A religious discrimination claim may be asserted under two theories: disparate treatment and failure to accommodate. *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1017 (4th Cir. 1996).

To state a prima facie disparate treatment claim, a Plaintiff must allege "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30, 296 (2012).

To state a prima facie failure to accommodate claim, a Plaintiff must allege "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *U.S. Equal Emp't Opportunity Comm'n v. Consol Energy, Inc.*, 860 F.3d 131, 141 (4th Cir. 2017) (internal citations and quotations omitted). A bona fide religious belief is one that is sincerely held and religious in nature. *Menk v. MITRE Corp.*, 713 F. Supp. 3d 113, 145–46 (D. Md. 2024). At the motion to dismiss stage, the Court may not consider whether a belief is sincerely held but rather may only analyze whether that belief is religious in nature. *Foshee v. AstraZeneca Pharms. LP*, Civil Action No. SAG-23-00894, 2023 WL 6845425, at *4 (D. Md. Oct. 17, 2023). While a plaintiff need not establish a prima facie claim of discrimination under either theory to survive a 12(b)(6) motion, the claim's elements are helpful in determining whether the plaintiff has stated a plausible claim in the first instance. *Yampierre*, 2022 WL 3577268, at *19.

The Complaint does not specify whether the religious discrimination claim is asserted under a disparate treatment or failure to accommodate theory but rather alludes to both. ECF No. 1 ¶¶ 47, 49 (stating that Defendants "committed religious discrimination and failed to

24

accommodate her" and that they engaged in "disparate treatment (where others received the accommodations requested by [Ms. Hurley])"). Defendants argue that Ms. Hurley fails to state a prima facie religious discrimination claim under either theory. As to disparate treatment, they assert Ms. Hurley has failed to allege satisfactory work performance or an adverse employment action "because of" her religious beliefs. ECF No. 18-1 at 12. Ms. Hurley responds that her suspension was tied to her religious beliefs rather than insubordination, and that "[t]he mandatory health survey directly and substantially conflicted with [her] religious beliefs." ECF No. 23-1 at 11. Ms. Hurley further argues that allegations of comparators are not required in the pleading stage and that her religious beliefs are sincerely held. ECF No. 23-1 at 9–11.

As to the disparate treatment claim, Ms. Hurley fails to allege satisfactory work performance and "different treatment from similarly situated employees outside the protected class." *Coleman*, 626 F.3d at 190. First, satisfactory work performance does not require a showing that the plaintiff "was a perfect or model employee," but rather that she "was qualified for the job and that [s]he was meeting h[er] employer's legitimate expectations." *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 225 (4th Cir. 2019). A plaintiff must allege that she was meeting her employer's performance expectations *at the time of the adverse employment action*. *Preston v. Balt. Police Dep't*, Civil Action No. ADC-23-1147, 2023 WL 8374810, at *4 (D. Md. Dec. 4, 2023) (emphasis added). The only reference to Ms. Hurley's work performance is the assertion that she "was an outstanding employee" working at the Department for 28 years. ECF No. 1 ¶¶ 3, 10. Accepting all factual allegations as true and drawing all reasonable inferences from the facts in her favor, this allegation falls short. Second, there are no allegations that similarly situated employees *outside of the protected class* were subject to different treatment. ECF No. 1 ¶¶ 34, 56. The allegation that Defendants "discriminat[ed] against [Ms. Hurley]

disparately from other employees who participated in documentation" is threadbare. *Compare Barnett v. Inova Health Care Servs.*, 125 F.4th 465, 472 (4th Cir. 2025) (concluding allegations regarding discriminatory intent were sufficient where plaintiff alleged that defendant-employer granted exemption requests for employees from prominent faiths and denied exemption requests to employees with lesser known or respected religious beliefs), *with* ECF No. 1 ¶ 34 (Defendants "on information and belief consider[ed] the exemptions of other religious faiths and of those with medical exemptions").

As to the failure to accommodate claim, Ms. Hurley fails to adequately allege that her belief is religious in nature. While Ms. Hurley asserts that she was unable to answer the survey because of her sincerely held religious beliefs, she also asserts that she offered her vaccination status verbally. ECF No. 1-2 at 13, 26. Ms. Hurley thereafter asserts that her "growing apprehension and concern with digitally captured information resulted from several Howard County and Maryland State data breaches and malware attacks." ECF No. 1-2 at 13; ECF No. 1-2 at 26 ("Due to several consecutive data breaches from December 13/2021 – February 2022 I felt and still feel that ransomware and hackers are a huge threat to the safekeeping of personal health information and biometric data"). While a Plaintiff may refuse to answer a survey based on their sincerely held religious belief, Ms. Hurley did, in fact, attempt to answer the survey, which conflicts with her assertion of religious discrimination. *See Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 510 (D. Md. 2019) (finding that religious discrimination based on failure to accommodate theory would survive motion to dismiss because Plaintiff alleged that his religious beliefs prevented him from answering questions regarding gender identity on his employer's ethics compliance course). "While an employer has a duty to accommodate an employee's religious beliefs, [it] does not have a duty to accommodate an employee's preferences."

26

*Dachman v. Shalala*, 9 F. App'x 186, 192 (4th Cir. 2001); *Finn v. Humane Soc'y of the United States*, 160 F.4th 92, 98 (4th Cir. 2025) (stating a "person must plead that their beliefs are grounded in religious, rather than secular reasons (medical, personal, etc.)"). Even if the claim were not time barred, the allegations nevertheless fail to state a claim for religious discrimination under Title VII and MFEPA.

### 2.    Hostile Work Environment under Title VII and MFEPA

Ms. Hurley also fails to state a hostile work environment claim because there are insufficient allegations of severe or pervasive conduct that occurred because of her religion. Title VII also prohibits an employer from subjecting their employees "to a hostile work environment on the basis of their membership in a protected class." *Yampierre*, 2022 WL 3577268, at \*20. To state a hostile work environment claim on the basis of religion, a plaintiff must allege that there was conduct that was "(1) unwelcome, (2) because of religion, (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and (4) imputable to the employer." *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 313 (4th Cir. 2008); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015); *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). "While the first element is subjective, the rest of the test is made up of objective components based on a 'reasonable person' standard." *Pueschel v. Peters*, 577 F.3d 558, 565 (4th Cir. 2009).

"The first element of a hostile environment claim, unwelcome conduct, is not a high hurdle." *Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 328–29 (4th Cir. 2018) (stating that a plaintiff may satisfy this element "simply by voicing her objection to the alleged harasser or to the employer"). "Conduct is 'unwelcome' when it continues after the employee sufficiently communicates that it is unwelcome." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 117–18

(4th Cir. 2021) (quoting *Albero v. City of Salisbury*, 422 F. Supp. 2d 549, 557–58 (D. Md. 2006)). As to the third element, to allege conduct that is "objectively severe or pervasive" is a high bar. *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 208 (4th Cir. 2019); *see Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (stating Title VII is not "a general civility code for the American workplace"). To determine whether conduct is severe or pervasive, the Court reviews both subjective and objective components: did the plaintiff "subjectively perceive the environment to be abusive" and would a reasonable person find the environment hostile or abusive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

The Court "look[s] at all the circumstances … [,] includ[ing] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. at 23. Incidents that cause bruised or wounded feelings, such as "rude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor, are not actionable under Title VII." *Sunbelt Rentals, Inc.*, 521 F.3d at 315–16; *Chang Lim v. Azar*, 310 F. Supp. 3d 588, 599 (D. Md. 2018) (holding that a plaintiff failed to allege a hostile work environment when "[t]he alleged conduct consist[ed] primarily of denials of requests to supervisors, negative evaluations of his job performance, and [critical] emails from colleagues"). A plaintiff must allege "instances where the environment was pervaded with discriminatory conduct aimed to humiliate, ridicule, or intimidate, thereby creating an abusive atmosphere." *Sunbelt Rentals, Inc.*, 521 F.3d at 316 (internal quotations omitted).

Finally, the conduct must be imputable to the employer. "[T]he employer may be liable in negligence if it knew or should have known about the harassment and failed to take effective

action to stop it." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333–34 (4th Cir. 2003) (en banc). "The employer is strictly liable for the supervisor's harassing behavior if it 'culminates in a tangible employment action,' but otherwise 'may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided.'" *Boyer-Liberto*, 786 F.3d at 278 (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013)).

Here, assuming, given the subjective nature of the first element, that the unwelcome conduct consisted of Defendants' requests to Ms. Hurley that she complete the survey, related meetings, and eventual suspension, there is a tenuous relationship—at best—between Defendants' request and Ms. Hurley's religion. The conduct Ms. Hurley alleges as harassing is directly attributable to her decision not to disclose her vaccination status in writing, not to her religion. *Chambers*, 2025 WL 1237358, at *6 (collecting cases); *see Stafford v. Acadia Pharms. Inc.*, Civil Action No. JRR-23-3230, 2025 WL 754483, at *6 (D. Md. Mar. 10, 2025) ("Even disparaging comments about vaccine status generally, had Plaintiff showed they occurred, would not support harassment based on religion."); *cf. Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 775 (D. Md. 2010) (distinguishing between indiscriminately abusive comments and racial comments, and finding that former could not be used in support of hostile work environment claim). Nevertheless, taking the allegations as true and resolving inferences in Ms. Hurley's favor, she has sufficiently alleged the first two elements of a hostile work environment claim. However, she has failed to allege conduct that is "sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere." *Sunbelt Rentals, Inc.*, 521 F.3d at 313.

When evaluating the third element of a hostile work environment claim, the Court "look[s] at all the circumstances … [,] includ[ing] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. A meeting in which Ms. Hurley "was not afforded an opportunity to speak without interruption … [and that] was unprofessional and had a tone of hostility, was demoralizing, demeaning and minimizing" does not rise to the level of creating an abusive atmosphere. ECF No. 1-2 at 24; ECF No. 1-2 at 26 (describing another "extremely unprofessional" meeting in which Ms. Hurley was subject to "a very brash, insincere tone" from someone who was "verbally demeaning condescending and evasive"). For these reasons, the Complaint fails to state a plausible claim for relief as to Count II and will be dismissed.

### 3.    Retaliation under Title VII and MFEPA

The Complaint alleges a plausible claim for relief as to retaliation, notwithstanding the fact that it is untimely.

Title VII also prohibits an employer from discriminating against an employee for "participating in a Title VII proceeding or opposing an employer's discriminatory practices." *Perkins*, 936 F.3d at 213; *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *see* 42 U.S.C. § 2000e-3. To state a retaliation claim, the plaintiff must allege that they: (1) "engaged in a protected activity …; (2) the employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the employer's adverse action." *Okoli v. City of Baltimore*, 648 F.3d 216, 223 (4th Cir. 2011); *Roberts*, 998 F.3d at 122 ("Complaints raised through internal company procedures are recognized as protected activity."). "At the motion to dismiss stage, a plaintiff need not prove these elements, but need only plausibly allege facts that

allow a court to reasonably infer that the elements are satisfied." *West v. Mayorkas*, Civil Action No. JKB-23-1661, 2024 WL 3878375, at *12 (D. Md. Aug. 20, 2024) (internal citation omitted).

A protected activity may include opposition activity such as "utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metro Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). "[M]aking a religious accommodation request is not protected activity. The making of such a request neither 'oppos[es] any practice' of the [defendant], nor constitutes 'participation in an investigation, proceeding, or hearing' to do with any Title VII violations committed by the [defendant]." *Perlman v. Mayor & City Council of Balt.*, Civil Action No. SAG-15-1620, 2016 WL 640772, at *5–6 (D. Md. Feb. 18, 2016) (internal citation omitted). Therefore, a plaintiff must allege that they "oppos[ed] the allegedly unlawful denial of a religious accommodation." *Menk*, 713 F. Supp. 3d at 152 (quoting *Equal Emp. Opportunity Comm'n v. N. Mem'l Health Care*, 908 F.3d 1098, 1102 (8th Cir. 2018)).

An alleged action is adverse if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Wonasue v. Univ. of Md. Alumni Ass'n*, 984 F. Supp. 2d 480, 491–92 (D. Md. 2013). This standard is more onerous than in a discrimination claim because the retaliatory action must be "materially adverse, meaning it causes significant harm." *Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346, 357–58 (2024) (internal citations and quotations omitted) (declining to extend lower pleading standard for "adverse action" to retaliation claims because "test was meant to capture those (and only those) employer actions serious enough to dissuade[] a reasonable worker from making or supporting a charge of discrimination."); *Burlington*, 548 U.S. at 68. An adverse action "need not be employment or workplace-related in order to sustain a retaliation claim." *Strothers*, 895 F.3d at 327. Adverse

actions do not include "petty slights, minor annoyances, and simple lack of good manners,"
*Burlington*, 548 U.S. at 68, and therefore "personal conflict alone does not constitute retaliation."
*Spencer v. Virginia State Univ.*, 919 F.3d 199, 208 (4th Cir. 2019); *Muldrow v. Blank*, Civil
Action No. PWG-13-1200, 2014 WL 938475, at *10 (D. Md. Mar. 10, 2014) (noting that neither
"a formal letter of reprimand" nor "a proposed termination" qualifies as an adverse action in a
retaliation claim). However, an unpaid suspension constitutes an adverse action for purposes of a
retaliation claim. *Shivers v. Saul*, Civil Action No. JKB-19-2434, 2020 WL 7055503, at *6 (D.
Md. Dec. 2, 2020); *Harris v. McDonough*, Civil Action No. JRR-20-3684, 2023 WL 6067028, at
*9 (D. Md. Sept. 18, 2023). The initiation of an internal investigation may also qualify as an
adverse action. *Yampierre*, 2022 WL 3577268, at *38.

To sufficiently plead a retaliation claim, however, the Complaint must also allege a
causal connection between the protected activity and the adverse action. *Penley v. McDowell
Cnty. Bd. of Educ.*, 876 F.3d 646, 656 (4th Cir. 2017). Causation may be inferred when there is a
close temporal proximity between the two events. *Id*.; *see also Causey v. Balog*, 162 F.3d 795,
803 (4th Cir. 1998) (holding thirteen months between initial charge and termination was too
long); *Penley*, 876 F.3d at 656 (holding eight or nine months was too long); *Roberts*, 998 F.3d at
126 (holding three months was too long); *Bowman v. Balt. City Bd. of Sch. Comm'rs*, 173 F.
Supp. 3d 242, 250 (D. Md. 2016) (same). "[A] lapse of as little as two months between the
protected activity and an adverse employment action is 'sufficiently long so as to weaken
significantly the inference of causation.'" *Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781,
790 (D. Md. 2013) (quoting *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003)). "A
lengthy time lapse between the employer becoming aware of the protected activity and the
alleged adverse employment action … negates any inference that a causal connection exists

between the two." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). In the absence of sufficient temporal proximity, "evidence of recurring retaliatory animus during the intervening period can be sufficient to satisfy the element of causation." *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (internal citations omitted).

Assuming that Ms. Hurley's allegations that she "oppos[ed] the allegedly unlawful denial of a religious accommodation" and filed an ethics report against Defendants is sufficient to plead a protected activity, and that the initiation of an investigation on December 29, 2021 and her suspension on July 26, 2022 constitute the requisite adverse actions, there are sufficient allegations in the Complaint to plead a causal connection. Ms. Hurley alleges that: (1) Defendants began the COVID-19 vaccination status inquiries on December 1, 2021, *see* ECF No. 1 ¶ 10; (2) she offered her vaccination status orally on December 28, 2021, *see* ECF No. 1-2 at 13, 26; and (3) was first notified on December 29, 2021, that she was under investigation for insubordination related to the Department's survey, *see* ECF No. 1-2 at 4. Drawing all reasonable inferences from the facts in Ms. Hurley's favor, the Court finds that it is plausible that sometime between December 1, 2021 and December 28, 2021, Ms. Hurley "oppos[ed] the allegedly unlawful denial of a religious accommodation." *Menk*, 713 F. Supp. 3d at 152. Because the time between Ms. Hurley's opposition to the vaccination status inquiries and the start of the Department's investigation for insubordination is close enough to infer a causal connection, Ms. Hurley has stated a plausible claim for relief. However, this claim shall nevertheless be dismissed because it remains untimely.

### 4.    Genetic Discrimination under MFEPA

Ms. Hurley fails to state a claim for genetic discrimination under MFEPA because there are no allegations that the COVID-19 vaccine or tests involve genetic information.

In addition to mirroring the antidiscrimination provisions of Title VII, MFEPA also protects against discrimination based on genetic information. Md. Code Ann., State Gov't § 20-606(a)(1)(i). Genetic information regards "chromosomes, genes, gene products, or inherited characteristics that may derive from an individual or a family member." Md. Code Ann., State Gov't § 20-601. And a "genetic test" is a "a lab test of human chromosomes, genes, or gene products that is used to identify the presence or absence of inherited or congenital alternations in genetic material that are associated with disease or illness." *Stepp v. Univ. of Md. Ctr. for Env't Scis.*, No. 1369, Sept. Term, 2024, 2025 WL 2985030, at *5 (Md. App. Ct. Oct. 23, 2025) (affirming trial court's dismissal of genetic discrimination claim) (citing Md. Code Ann., Ins. § 27-909(a)(3), (a)(5)). It does not appear that Maryland courts have fully opined on the issue of genetic information discrimination under MFEPA, but cases interpreting the federal analogue GINA (Genetic Information Nondiscrimination Act) are illuminating. 42 U.S.C. § 2000ff-1(a) (prohibiting discrimination based on genetic information, meaning an analysis of "human DNA, RNA, chromosomes, proteins, or metabolites, that detects genotypes, mutations, or chromosomal changes").

The Second Circuit has upheld a district court's finding that "vaccine history do[es] not constitute genetic information under" GINA. *Russo v. Patchogue-Medford Sch. Dist.*, 129 F.4th 182, 187 (2d Cir. 2025). And several other courts have dismissed GINA-related claims after finding that inquiries regarding COVID-19 vaccination status do not involve genetic information. *Rides v. City of Chicago*, No. 22-cv-2740, 2023 WL 6126726, at *2–3 (N.D. Ill. Sept. 19, 2023)

(holding that City's request that employee disclose whether he had received a COVID-19 vaccine was not "genetic information" and therefore did not violate GINA); *Harden v. Honeywell Int'l, Inc.*, No. 23-cv-176, 2023 WL 3310172, at *4 (N.D. Ga. May 8, 2023) (finding allegation that COVID-19 vaccine status contained "genetic information" under GINA failed to state a claim because assertions that vaccine constituted "gene-editing or genetic therapy" were conclusory).

Similarly, courts have also found that requesting and collecting COVID-19 test results does not constitute genetic information. *See Taylor v. Vanderbilt Univ.*, No. 22-cv-465, 2023 WL 2398761, at *8 (M.D. Tenn. Jan. 23, 2023) (granting motion to dismiss GINA claim because Plaintiff did not allege facts suggesting that employer used COVID-19 tests to obtain genetic information), *report and recommendation adopted in full*, 2023 WL 2390678 (M.D. Tenn. Mar. 7, 2023); *McKinley v. Princeton Univ.*, No. 22-cv-5069, 2023 WL 3168026, at *3 (D.N.J. Apr. 28, 2023) (same); *Anderson v. United Airlines, Inc.*, No. 23 C 989, 2023 WL 5721594, at *7–8 (N.D. Ill. Sept. 5, 2023) (same).

Here, the Complaint is wholly conclusory in asserting that Defendants "scheme[d] to collect and track Ms. Hurley's genetic DNA or provide proof of the same." ECF No. 1 ¶ 88. Numerous courts have found that neither COVID-19 vaccines nor tests constitute "genetic information" under GINA. *See supra* Section IV.A.4. There is no reason to treat these allegations differently under MFEPA. Therefore, Ms. Hurley fails to state a plausible claim for genetic information discrimination in Count IV.

### B.    Ms. Hurley's state-law claims

As discussed, *supra*, Ms. Hurley's federal claims are all time-barred. Thus, "this Court must determine whether to retain supplemental jurisdiction over the pendent state law claims."

*Brown*, 2011 WL 6415366, at \*12 (citing 28 U.S.C. § 1367(c)(3)). "Trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995); *Ford v. Red Roof Inns, Inc.*, Civil Action No. BAH-24-3414, 2025 WL 3640971, at \*7 (D. Md. Dec. 16, 2025). A "federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over … pendent state-law claims." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (internal citation omitted). The Supreme Court of Maryland has "often commented that … state constitutional provisions are *in pari materia* with their federal counterparts." *Dua v. Comcast Cable of Md., Inc.*, 370 Md. 604, 621 (2002). Because "the same analysis applies to the Plaintiff'[s] corresponding state constitutional claims and in the interests of judicial economy, fairness, and convenience," this Court will address the pendant state-law claims. *Brown*, 2011 WL 6415366, at \*12.

### 1. Negligence

Ms. Hurley's negligence claim is impermissibly duplicative of her Title VII claim and shall be dismissed.

To assert a claim of negligence in Maryland, "a complaint must allege facts sufficient to support a finding of: 1) a duty to the plaintiff (or to a class of which the plaintiff is a part), 2) a breach of that duty, and 3) a causal relationship between the breach and the harm, and 4) damages suffered." *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 226 Md. App. 420, 438 (2016), *aff'd*, 451 Md. 600 (2017). "Because no common law tort of employment discrimination exists in Maryland, this Court has repeatedly disallowed negligent supervision claims appended to Title VII cases." *Greenan v. Bd. of Educ. of Worcester Cnty.*, 783 F. Supp.

36

2d 782, 791 (D. Md. 2011) (collecting cases). Therefore, "if a count does nothing more than duplicate a count brought under Title VII … then that count should be dismissed." *Stepp*, 2025 WL 2985030, at *5 (Md. App. Ct. Oct. 23, 2025) (quoting *Perry v. FTData, Inc.*, 198 F. Supp 2d 699, 707–08 (D. Md. 2002)) (internal quotations omitted).

A Plaintiff may not "merely assert that the same set of facts giving rise to a Title VII claim gives rise to a negligence claim." *Harris v. Mayor & City Council of Balt.*, 429 F. App'x 195, 205 (4th Cir. 2011) (affirming dismissal of negligence claim on summary judgment because Plaintiff only offered conclusory assertions in support of claim). And simply "stating that a duty existed, or that it was breached, or that the breach caused the injury does not suffice" to state a claim for negligence. *Horridge v. St. Mary's Cnty. Dep't of Soc. Servs.*, 382 Md. 170, 182 (2004) (adjudicating a claim for negligent supervision). For instance, alleging that an employer had a duty to "to ensure that [Plaintiff] was treated equally with all other employees and not discriminated against or otherwise harassed, demeaned, or subject to public ridicule," arises out of the requirements of Title VII and MFEPA. *Chambers*, 2025 WL 1237358, at *7; *see also Chambers*, 2025 WL 1237358, at *7 n.3 (finding, in addition, that Plaintiff failed to cite any source to support allegations that Defendants "had a duty to ensure that [Plaintiff] had his health and personnel information protected and that it remained private."). Here, Ms. Hurley's negligence claim, Count V, simply duplicates her Title VII and MFEPA claims, and it therefore must be dismissed.

### 2.    Breach of Contract

Ms. Hurley's breach of contract claim shall be dismissed because Ms. Hurley has failed to plead the essential elements of the claim.

"[T]o prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (Md. 2001). "Courts routinely dismiss breach of contract claims where the complaint is devoid of any specific agreement or contractual terms." *Friedli v. Silver Star Props. REIT, Inc.*, Civil Action No. GLR-23-0546, 2024 WL 1406329, at *3 (D. Md. Feb. 15, 2024) (collecting cases). A general assertion that a defendant was in breach of its contract with the plaintiff, without identifying any particular contract, fails to state a claim. *Rosin v. Bd. of Educ. of Charles Cnty.*, Civil Action No. TDC-21-0983, 2021 WL 4554342, at *9 (D. Md. Oct. 5, 2021) (stating that "nowhere [does the Complaint] describe[] any employment contract [Plaintiff] had with the [Defendant] or any of the terms of such a contract"). Furthermore, if a breach of contract claim is but "[a] thinly-veiled attempt to replead [a] cause of action under Title VII, the claim must be dismissed." *Lambright v. Rhone-Poulenc Rorer Pharms. Inc.*, Civil Action No. HAR-95-597, 1995 WL 375589, at *5 (D. Md. June 19, 1995) (internal citations and quotations omitted).

Defendants argue that the Complaint "lacks any allegations that a contract existed, the purported parties to the contract, or the terms of the contract." ECF No. 18-1 at 27–28. The Court agrees. The Court cannot ascertain from the Complaint the parties to the contract, their obligations, or the specific alleged breach—all essential elements of a breach of contract claim. Ms. Hurley states that Defendants breached their contract by "mispresent[ing] their religious tolerance towards individuals," "fail[ing] to disclose the material facts regarding [her]

38

employment," and "suspending her without just cause." ECF No. 1 ¶¶ 109–113; ECF No. 1 ¶ 113 (alleging Defendants attempted to coerce Ms. Hurley into "disclosing her protected medical information regarding the COVID-19 vaccinations and testing and outrageous subjection to experimentation and DNA tracking in a world-wide police database"). These allegations are both insufficient to state a claim and wholly conclusory, even viewed in the light most favorable to Ms. Hurley. The breach of contract claim, Count VI, shall therefore be dismissed.

### 3.    Invasion of Privacy

Ms. Hurley's claim for intrusion upon seclusion shall be dismissed because it contains only conclusory assertions regarding the alleged intrusion into her privacy and publication of private information to the public.

Maryland law provides a remedy for four types of invasion of privacy: intrusion upon seclusion; appropriation of another's likeness; public disclosure of private facts; and publicity that places a person in a false light. *Harnish v. Herald-Mail Co.*, 264 Md. 326, 336–37 (1972). Ms. Hurley's invasion of privacy claim appears to refer to a claim for either intrusion upon seclusion or public disclosure of private facts. Below, the Court finds that she fails to state a claim as to either tort.

### i.    Intrusion upon seclusion.

Intrusion upon seclusion is defined as an "intentional intrusion upon the solitude or seclusion of another or his private affairs or concerns that would be highly offensive to a reasonable person." *Harleysville Preferred Ins. Co. v. Rams Head Savage Mill, LLC*, 237 Md. App. 705, 725 (2018) (internal citation omitted). A plaintiff must plead 3 elements to establish intrusion upon seclusion: (1) an intentional intrusion; (2) into one's private affairs; (3) that is "highly offensive to a reasonable person." *Furman v. Sheppard,* 130 Md. App. 67, 73 (2000)

(internal citation omitted). As discussed below, Ms. Hurley cannot establish the second and third elements of this claim.

Under the second element, courts evaluate whether a defendant intrudes into private affairs by analyzing if the plaintiff has a reasonable expectation of privacy in the information sought. *Whye v. Concentra Health Servs., Inc.*, Civil Action No. ELH-12-3432, 2013 WL 5375167, at *14 (D. Md. Sept. 24, 2013) (internal citation omitted), *aff'd*, 583 F. App'x 159 (4th Cir. 2014). As relevant here, however, courts recognize that individuals do not have a right to privacy to their vaccine status or other information disclosed in furtherance of preventing the spread of COVID-19. *See, e.g.*, *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 293, *opinion clarified*, 17 F.4th 368 (2d Cir. 2021) (holding that there is no constitutional right to privacy to vaccine requirements imposed during the COVID-19 Pandemic); *Bauer v. Summey*, 568 F. Supp. 3d 573, 603–04 (D.S.C. 2021) (finding efforts to reduce the spread of COVID-19 are a legitimate public interest that does not intrude on the right to privacy). Ms. Hurley alleges Defendants invaded her privacy by inquiring into her vaccination status and her "personal, private medical ethnic, national origin and religious information and to enter the same into a world-wide database." ECF No. 1 ¶ 116. She also alleges that Defendants' application for a religious exemption required Ms. Hurley to disclose "further private information." *See* ECF No. 1 ¶ 118. Thus, Ms. Hurley's intrusion upon seclusion claim fails as a matter of law because she cannot establish that she has a reasonable expectation of privacy in her COVID-19 vaccination status or her national origin or religious status allegedly disclosed in furtherance of preventing the spread of COVID-19.

Next, under the third element, courts determine whether an invasion of privacy is "highly offensive" using an "objective reasonableness standard." *Neal v. United States*, 599 F. Supp. 3d

270, 306 (D. Md. 2022) (internal citation omitted). Here, although Ms. Hurley alleges that Defendants' inquiry into her COVID-19 vaccination, national origin, and religious status constituted an "unjustifiable intrusion" into her privacy, ECF No. 1 ¶ 116, courts have determined that such an inquiry is not highly offensive to a reasonable person. *See Chambers*, 2025 WL 1237358, at *8 (finding inquiry into religious beliefs or vaccine status to determine whether Plaintiff was eligible for a COVID-19 vaccine exemption was not highly offensive to a reasonable person); *Stepp*, 2025 WL 2985030, at *6 (Md. App. Ct. Oct. 23, 2025) (finding an employer's inquiry into an employee's vaccination status without publicly identifying them reasonable). Thus, Ms. Hurley fails to satisfy the third element of intrusion upon seclusion. Because she cannot establish the second and third elements of the claim, she fails to plausibly allege invasion of privacy through intrusion upon seclusion.

### ii.    Public disclosure of private facts.

Ms. Hurley also appears to allege a public disclosure of private facts claim by pleading that her vaccine status was released to a "world-wide database." ECF No. 1 ¶ 116. To state a claim for public disclosure of private facts, a plaintiff must plead facts showing (1) the disclosure of a private matter; (2) that would be highly offensive to a reasonable person; and (3) not of legitimate concern to the public. *Furman,* 130 Md. App. at 77. Here, Ms. Hurley cannot establish the second or third elements of this claim. As discussed above, she cannot prove that the disclosure of her vaccine, national origin, or religious status was highly offensive to a reasonable person under the second element. *See supra* Section IV.B.3.i.; *see also Mosley v. Oakwood Lutheran Senior Ministries*, 995 N.W.2d 494, 494 (Wis. Ct. App. July 27, 2023) (unpublished table decision) (affirming dismissal of public disclosure claim in part because plaintiff "provides no authority in which the disclosure of a positive COVID-19 test result, or other analogous

information, was deemed highly offensive to a reasonable person"). Ms. Hurley's claim also fails because, in the context of the COVID-19 pandemic, a plaintiff's vaccine status is of legitimate concern to the public under the third element. *Baugh v. Austal USA, LLC*, 762 F. Supp. 3d 1201, 1214 (S.D. Ala. 2025), *reconsideration denied*, No. 1:22-CV-00329-KD-C, 2025 WL 394977 (S.D. Ala. Feb. 4, 2025). Thus, because Ms. Hurley cannot establish the second and third elements of the claim, she fails to plausibly allege invasion of privacy through public disclosure of private facts.

Ms. Hurley has failed to state a claim to either intrusion upon seclusion or public disclosure of private facts. Accordingly, Count VII is dismissed.

## CONCLUSION

Plaintiff's claims fail on either procedural or substantive grounds, or both. As a result, the Court GRANTS Defendants' Motion to Dismiss. A separate Order consistent with this opinion follows.

Date: March 30, 2026

/s/
Chelsea J. Crawford
United States Magistrate Judge

42